# NELAND LOOMIS, Plaintiff in Error, v. ALLEN LOOMIS, Defendant in Error.

## ERROR TO SUPERIOR COURT OF CHICAGO.

A, in anticipation of a purchase of land, proposed to B to become interested with him in it. B did not accept the proposition, but loaned money to A, with an option reserved to B to take an interest. B did not give any notice to A of his intention to take the interest; did not pay or offer any money beyond the loan with which to secure the property, but waited till it appeared that the purchase was a profitable one, then filed his bill. *Held*, that B could not establish a trust in A for his benefit. Had he contributed to the payments as they fell due, and treated the transaction as a purchase, it might have created a resulting trust in favor of B.

THE bill in this case was filed Dec. 27, 1856, to compel Allen Loomis, the defendant, to convey to complainant an undivided one-quarter of lots 13, 14, 15, 16, 17, 18 and 19, in block 4, Fort Dearborn Addition to Chicago.

A summary of this case may be stated as follows:

Matthew Laflin having negotiated for the property in question of C. M. Reed, for $7,000, agreeing to pay in cash one-quarter of the purchase money, and the balance in one, two and three years, at seven per cent., he offered, in February, 1852, one-half of this purchase, at the same price, to Allen Loomis, if he would advance Laflin's half of the purchase money, taking Laflin's note therefor, with eight per cent. interest, not to be repaid till all the purchase money was paid. Allen Loomis, after some delay, *i. e.*, in October, 1852, accepted the offer, agreed to join Laflin in the purchase, obtained a deed from Laflin, and did advance, as fast as the payments became due, all the money called for by the terms of the contract.

Before Allen Loomis accepted the offer of Laflin, he offered to give Neland Loomis a quarter interest in the property, if Neland Loomis would advance the whole of the purchase money as fast as it became due, the money advanced to Laflin to be secured by his note at eight per cent., and not to be repaid by Laflin till the purchase money was all paid up.

Complainant lent to defendant, May 27, 1852, $900, and took therefor a receipt, which is set out below.

Allen Loomis went to Chicago in October, 1852, and accepted the offer of Laflin, and took a deed to himself from Laflin of an undivided half of the property, upon an agreement to fulfill the conditions of the purchase. Allen Loomis made all the payments himself, except that he used the $900 borrowed of Neland Loomis towards the first payment.

Neland Loomis alleges that he accepted the offer of Allen Loomis (which he alleges was, that Neland Loomis should advance one-half the purchase money, and take Laflin's note for Laflin's share), and advanced the $900 to purchase said property, and was ready to advance the balance, etc., and is entitled to one-quarter of the property, etc., and alleges a contract between Neland Loomis and Allen Loomis, to purchase the undivided half of the lands upon the terms proposed; that Allen Loomis notified Laflin of this acceptance, and paid the $900 on behalf of Neland Loomis; but afterwards induced Laflin to make a deed to him alone, and now seeks to deprive Neland Loomis of his right in the property.

The answer denies the case made by the bill.

The cause was heard below upon the bill, answer, replication and proofs, and the court ordered a decree to be entered, dismissing the bill at the costs of the complainant. It is contended that this is erroneous.

The following is the receipt referred to:

"SUFFIELD, May 27, 1852.

"Received of Nelland Loomis $900, which I do agree to get Matthew Laflin's note, of Chicago, for the same amount, drawing eight per cent. annually.

"This money is *calculated to be turned in* towards the seven lots M. Laflin has purchased in Chicago, which cost $7,000, which the said Laflin has agreed that the said Neland shall have one-quarter of the lots at first cost, said A. Loomis is to have another quarter of the same lots which the said Allen and Neeland are to be equal owners.

"The whole affair in loss and gain.

    (Signed)                        ALLEN LOOMIS."

SCATES, McALLISTER & JEWETT, for Plaintiff in Error.

I. N. ARNOLD, and C. GREGORY, for Defendant in Error.

WALKER, J. It is insisted upon the argument, that the evidence in this case shows that a trust was created in favor of complainant, by his purchase of the premises by defendant. It was not an express trust, as that can alone be created by written agreement executed by the owner. Such a trust cannot be created by a person having no title to the premises. It is, of course, impossible for a person not having title, to transfer any interest in a thing to another person. In this case, all of the negotiation in reference to complainant acquiring an interest in the premises, occurred before defendant became invested with any title, or even such a contract as he could enforce against Laflin. Defendant at the time only had an offer from Laflin to permit him, upon complying with the terms of the offer, to become a purchaser of one-half of the lots. This offer was not accepted by him until several months subsequent to his proposition to complainant.

Was a resulting trust created by this transaction? Such a trust is always implied from the acts of the parties, or is created by parol agreement, and acts performed in pursuance of such an agreement. It is clearly illustrated by Chancellor Kent, who says of a resulting trust, that " when an estate is purchased in the name of A, and the consideration money is actually paid by B, there is a resulting trust in favor of B, provided the payment of the money is clearly proved. The payment *at the time* is indispensable to the creation of the trust; and this fact may be established, or the resulting trust rebutted, by parol proof." 4 Kent Com. 305. This is the well recognized doctrine established by adjudged cases. Thus it is seen that to create a resulting trust, the purchase money must belong to one person, and the purchase made in the name of another. The purchase money actually paid at the time draws to it the equitable right to enjoy the benefit of the purchase, and although the legal title may be transferred to a different person, a court of chancery will execute the trust, and prevent the perpetration of a fraud.

There was no money paid by complainant on the purchase, when it was made. The money, which he advanced, was before the contract was closed with Laflin, and complainant had

not then, if he ever had, agreed to become a party to the purchase. It was advanced as a loan, with the option, if he chose, to convert it into an advance on the purchase, if Laflin's offer was accepted. There is no evidence in the record, that he ever gave notice that he so regarded the advance of money, at any time before the conveyance was made to defendant, or before the remainder of the purchase money was paid. He made no other advance of money to meet the payments, nor did he offer to do so, and has not tendered his proportion of the purchase money, if he was a purchaser. It seems clear that he regarded it a loan, until it was demonstrated that the purchase was profitable. He on different occasions denied that he had any interest in the premises. Had he treated the transaction as a purchase, and made the payments as they fell due, the transaction might have created a resulting trust. But failing to do so, he cannot be regarded as having any interest in the land.

The decree of the court below is affirmed.

*Decree affirmed.*