8 Ill.2d 16 (1956)
132 N.E.2d 540
NELLIE PERNOD, Appellee,
v.
AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO et al., Appellants.
No. 33589.
Supreme Court of Illinois.
Opinion filed January 19, 1956.
Rehearing denied March 19, 1956.
*17 ANTONOW & WEISBOURD, of Chicago, (GEORGE S. FEIWELL, and DAVID LESTER, of counsel,) for appellant American National Bank and Trust Company of Chicago; RAYMOND H. GROBEL, JR., of Chicago, guardian ad litem and trustee, pro se, appellant.
JESSE H. BROWN, of Chicago, for appellee.
Decree reversed.
Mr. JUSTICE KLINGBIEL delivered the opinion of the court:
Nellie Pernod, the settlor of a voluntary inter vivos trust, brought suit in the superior court of Cook County to revoke the trust on the ground of mistake. She named as parties defendant the American National Bank & Trust Company of Chicago, a trustee; her daughter, Cleon Murphy, a life beneficiary; her grandson, Pernod Miller, a cotrustee and contingent remainderman; and her minor great-granddaughter, Katherine Miller, a contingent beneficiary. An individual appointed as guardian ad litem for the minor defendant and as trustee for persons not yet in being filed his appropriate answer, as did the trust company. The defendants Cleon Murphy and Pernod Miller filed answers admitting the allegations of the complaint and consenting to the entry of a decree in accordance with plaintiff's prayer for relief. After a hearing the court found the trust instrument had been executed through mistake *18 and misunderstanding, and a decree was entered setting it aside and ordering the property reconveyed to the plaintiff. The corporate trustee and the guardian ad litem and trustee for persons not yet in being appeal from the decree. Since a freehold is involved the appeal comes directly to this court.
The trust instrument, executed on April 17, 1953, provides that the trustees are to pay to the plaintiff for her life such sums as in their discretion are necessary for her welfare, maintenance and comfortable living. If the plaintiff's daughter, Cleon Murphy, is alive when the plaintiff dies, the trustees are to pay the income, and such part of the corpus as may be necessary, to the daughter for her life. If at the close of these life estates plaintiff's grandson, Pernod Miller, is alive, he is to receive the remainder; but if at that time he is dead the remainder is to go to the then living descendants of the plaintiff. Cleon Murphy is the plaintiff's only child. Pernod Miller is the only child of Cleon Murphy; and Katherine Miller, the minor, is the only child of Pernod Miller. By its terms the trust instrument is declared to be irrevocable and not subject to amendment.
The corporate trustee urges that the evidence is insufficient to support the decree. The record discloses that the plaintiff, a widow eighty years of age, first consulted her attorney on January 15, 1953. At that meeting it was decided to establish a trust of the remainder of her deceased husband's estate, which she no longer desired to manage. On March 5 she again conferred with him about the trust, and a third meeting occurred on April 14. On April 17 another conference was held, at which time the plaintiff executed the instrument. She thereafter placed it in a safe-deposit box which she shared with her daughter, Cleon. When Cleon read the instrument she became highly disturbed and asked her mother to try to have it changed. Cleon was so upset and hysterical about the matter that she *19 went to a hospital. Eighteen months after the trust was established plaintiff brought this suit to set it aside.
She testified that she was not in good health at the time she signed the trust agreement; that she had informed her attorney she wanted her daughter Cleon, after plaintiff's death, "to receive just what I had been receiving a month," and to have everything "just like I had it." She said she wanted her daughter to have everything after she was gone, and if anything was left at her daughter's death it was to go to the grandson. Plaintiff further testified that she did not ask for an irrevocable trust because she did not know anything about one. The question of the trust being revocable, she said, was never discussed. She thought the trust would be "just like a will." Pernod Miller, the grandson, testified that he was present at the final conference; that no one then read the trust instrument aloud; and that as he recalled there was no discussion about it at that time.
The attorney who drafted the trust is a specialist in that field of the law. He testified that during their discussion of the matter he told plaintiff in order to accomplish her purpose the trust should be made irrevocable; that he explained to her an irrevocable trust is one which is fixed and cannot be changed; and that plaintiff thought about the matter and requested him to go ahead and prepare it that way. At the first conference he asked plaintiff whether she wanted her daughter to get the property outright after plaintiff's death, or whether she preferred to have the property held in trust for her daughter's benefit. The plaintiff, he said, then thought about the question and decided it would be better to have the property held in trust for her daughter. At the March 5 meeting a draft of the instrument, substantially the same as that which was ultimately executed, was shown to Mrs. Pernod. They went through it article by article and discussed it as they went along. The witness further testified that as he summarized it for her he thought she understood his explanations, but *20 that "it is possible" she did not understand the provisions.
The rule has long been established that where the grantor has not reserved a power to revoke, a voluntary trust may be set aside only upon a showing that it was induced by fraud, duress, undue influence or mistake, except where all the parties in interest are ascertained, are under no incapacity, and consent to the revocation. (Lawrence v. Lawrence, 181 Ill. 248; 3 Scott, Law of Trusts, sec. 329A.) Since in the present case all the beneficiaries are not in being and sui juris, revocation by consent is impossible. To sustain the burden of proving that an instrument was executed by mistake the evidence must be clear and convincing. (Lines v. Willey, 253 Ill. 440; Silurian Oil Company v. Neal, 277 Ill. 45.) In Finucan v. Kendig, 109 Ill. 198, a settlor sought to revoke a trust on the ground that he and his deceased wife had intended to create a revocable arrangement and that a power of revocation had been omitted by mistake. It was further asserted that the settlors had intended the survivor to receive the trust estate in fee, whereas the instrument gave the survivor only a life estate with remainder to the settlors' children. Both the plaintiff and his agent testified that these two mistakes had been made, but this court held the evidence insufficient, saying: "The deed speaks for itself, and it is cogent evidence that it was the instrument, in all its provisions, intended to be prepared. To allow one, at such a distance of time as in this case, to overturn a solemnly executed deed, made by his request and direction, by declaring that his intention was different from what the writing expresses, would be most dangerous to the security of instruments of writing. The evidence in this regard, to have avail, should be of the most satisfactory kind."
In the case at bar not only is there an absence of a power of revocation, but the instrument expressly provides that "The trust created hereunder is hereby declared to be irrevocable and not subject to amendment by any party *21 hereto or by any beneficiary hereunder." Because the testimony of a settlor seeking to revoke a trust is likely to be unreliable, and because solemn written instruments are not to be lightly overturned, strong corroboration of the settlor's testimony is required in order to warrant the granting of relief. (Restatement, Trusts, sec. 332(c).) In the present case, even if we disregard the testimony of the drafting attorney that there was no mistake, the plaintiff's testimony stands uncorroborated and is clearly inadequate to support the decree. In her search for corroboration plaintiff seizes upon the attorney's statement, on cross-examination, that it is "possible" the settlor did not understand the provisions of the trust agreement. This concession by the witness is obviously no more than a conscientious acknowledgment of the fact that no human being can read the mind of another with certainty. It is of no aid whatever to the plaintiff's case.
It is further argued that it is unlikely an elderly lady in poor health would be capable of understanding a trust agreement several pages long, couched in precise and formal legal phraseology; and that "Few laymen, younger, more vigorous and experienced in business would understand it." The argument proves too much. If such a contention had merit very few modern legal instruments could withstand attacks of the kind made in this case. The general rule is that if the words are written as the parties intended they should be written or supposed they were written when the instrument is signed, then no matter how much they may be mistaken as to the meaning of those words no relief can be granted, either at law or in equity.
Plaintiff finally invokes the rule that findings of the chancellor on conflicting evidence will not be disturbed unless clearly and palpably against the weight of the evidence. In answer to this position it suffices to observe that the requirements of the rule are not fulfilled here. The findings are clearly and palpably against the weight of the *22 evidence. The testimony of the attorney who drafted the trust instrument shows that he painstakingly explained its provisions to the plaintiff and specifically told her that "this document would stand, that it could not be changed." The plaintiff's testimony, on the other hand, is equivocal and contradictory, and is far from being clear and convincing.
Other error is assigned which, in view of our conclusion, it is unnecessary to discuss. The decree of the superior court is against the manifest weight of the evidence and is accordingly reversed.
Decree reversed.
Mr. JUSTICE DAILY, dissenting:
I cannot agree with either the reasoning or the result of the majority opinion. It is true that in the absence of reservation of revocatory powers, a voluntary trust may generally be set aside only upon a showing that it was induced by fraud, duress, undue influence, or mistake. However, if it can be shown by clear and convincing evidence that provisions were inserted or omitted because of mistake and that, as written, they did not truly represent the settlor's desires and intention at the time of execution and delivery, the trust may be revoked even though it is, by its express terms, irrevocable. (Lawrence v. Lawrence, 181 Ill. 248; Potter v. Fidelity Ins. Trust and Safe-Deposit Co. 199 Pa. 360, 49 Atl. 85; Restatement of the Law of Trusts, Vol. 2, sec. 333e). Although the statements of the settlor are not, in and of themselves, sufficient ground for revocation, they may suffice when corroborated by other direct or circumstantial evidence. Restatement of the Law of Trusts, vol. 2, sec. 332c.
The settlor in this case testified that during the several visits which were made to the attorney's office, she was never told that the agreement could not be changed. Her understanding of the instrument was, rather, expressed as follows: "I thought it was like a will, you know. I just *23 could not figure how that could be, that I could not change it. I thought it would be like a will." At other times during her testimony she referred to the fact that she was 79 years of age, had been in ill health for some time prior to the execution of the present trust, and that she was relying upon her attorney to see that the agreement was as she desired.
The drafting attorney testified that after talking with the settlor concerning the management of her property, he suggested either a bank agency account or trust arrangement and that the latter was agreed upon. He further testified that to the best of his recollection he explained various provisions of the agreement to the settlor, including the one pertaining to irrevocability, but did not read the agreement to her nor did he remember her reading it. When asked if he had any doubts that the settlor understood the instrument he replied: "No, I can't say that I did. Quite obviously I never would have had her sign it if I felt that she didn't understand it. That doesn't mean that she did understand." At one point he said, "I told her, I tried to tell her  remember, she's an elderly lady in all of this  but I tried to advise her what each of these meant in order to get her to be answering as to whether or not it measured up as to what she wanted." He also said, "When I recited the substance and tried to explain the provisions of the trust agreement I thought she understood it. I cannot be positive but I made my best efforts, let's put it that way. It is quite possible that I did not get through to her on all these points. It is possible that she did not understand any of the provisions of the trust agreement."
Thus, in the present case, the evidence of mistake is not confined solely to the settlor's testimony but is supported by other proof. The fact that the drafting attorney, upon being advised of her wishes, had advised either a bank agency account or a trust arrangement would indicate that the settlor's primary purpose in creating the trust was not *24 to dispose of her property but rather to reduce the burden of its management. If so, it would be quite reasonable to assume that she intended to retain the power to revoke the trust. As is said in the Restatement of the Law of Trusts, vol. 2, sec. 332h: "The reasons for which the trust was created may indicate that the settlor intended to reserve a power of revocation, although no such power was reserved in the trust instrument. Thus, if it is shown that the reason of the settlor for creating the trust was to meet a temporary emergency, this is evidence that he did not intend to make the trust irrevocable." This is further supported by the fact that the settlor had managed the property from 1941 to 1953 and had relinquished these duties only because of ill health. In addition, the attorney admitted that he had never read the instrument to the settlor and was not sure whether she even understood his explanation of its provisions. Therefore, it can hardly be said that the settlor's testimony was entirely uncorroborated.
For these reasons, I am of the opinion that the evidence was sufficient to warrant revocation in this case and would affirm the lower court which was in far better position to weigh the demeanor, sincerity and capabilities of the witnesses.