Thomas I. Stewart, Appellant, *v.* Merchants National Bank of Aurora, Trustee *et al.*, Appellees.

(No. 71-64; )

Second District—January 19, 1972.

Hart, Banbury, Gullstrand & Banbury, of Aurora, for appellant.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This appeal arose out of a petition by the appellant to revoke a special ten year trust after only three years had elapsed from the date of its execution in 1967. The primary purposes of the trust were twofold: to provide for the rehabilitation of appellant from personal injuries suffered by him, and for regular payment of mortgage indebtedness on a new home in substitution for the home he owned at the time the trust was executed. The trust was spendthrift in nature. The trial court held that appellant could not revoke the trust because interests of minors and unborn heirs were involved, and this appeal was taken.

The trust in question was suggested to the appellant by his attorney following the settlement of a personal injury action wherein he represented the appellant. Appellant had been struck by an automobile while riding his motorcycle to work. Serious damage to one eye occurred as well as other injuries. In the trust instrument, appellant's attorney designated himself as the settlor and appellant as the beneficiary.

■■ From these circumstances, appellant has argued on appeal that the trust was void as a matter of law inasmuch as the attorney acted as settlor without having full ownership of the trust property. Appellant's authority is the statement in *Loomis v. Loomis* (1862), 28 Ill. 454, that:

"Such a (express) trust cannot be created by a person having no title to the premises. It is, of course, impossible for a person not having title, to transfer any interest in a thing to another person."

After examining this authority, however, there is no question in our minds but that the authority cited by the appellee, *Guaranty Trust Co. v. New York Trust Co.* (1947), 297 N.Y. 45, 74 N.E.2d 232, is the one properly applicable to the facts of our case. That case holds that

"The person who furnishes the consideration for the creation of a trust is the settlor, even though, in form, the trust is created by another."

Thus, so long as appellant intelligently ratified this trust, it is not void for want of a competent settlor. Although some testimony arose in the proceedings below concerning the degree of appellant's understanding of the trust provisions, such facts have not entered into this appeal. We therefore hold that the beneficiary of the trust was in fact the settlor of the trust.

■■ The more significant controversy in this appeal is whether ap-

pellant was the sole beneficiary of the trust. Thus the chief question on this appeal is whether the instant trust created such an interest in the appellant's heirs that their consent was necessary for revocation. At this point we quote the pertinent trust provision:

"On May 25, 1977, upon the beneficiary's death, or upon the exhaustion of the principal and income by disbursements as herein provided, whichever first occurs, the Trust shall terminate. Upon the beneficiary's death, if there be any principal or accumulated income remaining in the Trust Estate, the Trustee shall pay the beneficiary's funeral expenses, the claims against the estate and the administration expenses of his estate, the taxes due by reason of his death, and distribute the remainder as the Last Will and Testament of the beneficiary may provide, or to the beneficiary's heirs-at-law in equal shares if beneficiary leaves no valid will."

The trial court held that contingent interests were created in the appellant's heirs-at-law so that their consent would be required to revoke the trust, and since such heirs would include minors and possible unborn heirs, their consent was impossible. The trial court's statement of the applicable law was entirely correct if, in fact, the trust did create legal interests in the heirs requiring their consent for revocation. In *Pernod v. American National Bank and Trust Company* (1956), 8 Ill.2d 16, 132 N.E.2d 540, cited by both appellants and appellees, it was held that a trust may not be revoked by consent unless "all parties in interest are ascertained, are under no incapacity, and consent to the revocation." On the other hand, within these limits, according to *Vlahos v. Andrews* (1936), 362 Ill. 593, 1 N.E.2d 59,

"The sole beneficiaries of a trust, created by themselves as settlors, may revoke the trust without the consent of the trustee, although they do not reserve a power of revocation."

As we have held that appellant was the settlor of this trust, that requirement under *Vlahos*, at least, is satisfied in our case.

One difference between this trust and that involved in *Vlahos* is that in the instant trust, the trust was expressly irrevocable. However, the Restatement (2nd) of Trusts, Sec. 339, and *Illinois Central Railroad v. U.S.* (1967), 263 F.D. 427 (construing an Illinois trust)) as well as authorities cited in *Illinois Central* from other jurisdictions suggest that the insertion of such a clause does not affect the rule in *Vlahos*. In *May v. Marx* (1939), 300 Ill.App. 144, 20 N.E.2d 821, an attempt was made to modify a trust by the execution of a supplemental trust instrument. The settlor of that trust was also the sole beneficiary thereof with regard to income, and she sought, by means of the supplemental instrument, to change the income provision from a lump sum $3000 quarterly payment

340

out of income to a payment of all accumulated income. The trustee petitioned the trial court to construe the two instruments, and the trial court held the modification to be valid. On appeal, the same argument which we have in this appeal was raised, namely, that the trust created interests in minors or unborn heirs whose consent was necessary for modification. The argument was based on the following provision of the trust.

"This Trust shall continue for twenty five years from this 27th day of April, 1921, if I shall so long live. Upon my death the trust shall be dissolved and the property descent to my heirs, as the law provides."

The court held that this language did not create an interest in the heirs such as to require their consent for modification or revocation, as follows:

"Our opinion is that the words in the trust instrument of April 27, 1921, directing that in the event of her death prior to the termination of the trust, the 'property shall descend to my heirs, as the law provides' are words of limitation and not of purchase, and that they created no remainder interests, contingent or otherwise, in any of the defendants, and that therefore, she was the sole beneficiary of the trust and as such had the power at any time to revoke or modify without the consent of any other person."

■■ Appellee has objected strenuously to authorities such as the *May* case herein on the ground that they are merely applications of the now obsolete "Doctrine of Worthier Title" which has been done away with by statute in Chap. 38, Sec. 188, Ill. Rev. Stat. (1955). We are aware that this statute provides that:

"Where a deed, will or other instrument purports to create any present or future interest in real *or personal* property in the heirs of the maker of the instrument, the heirs *shall take,* by purchase and not by descent." (Emphasis supplied.)

Imperative as that language may seem, we refuse to believe that it would require a trust to be construed in such a way as to override the expressed intent of the maker of such an instrument. It is important to note that in the *May* case, *supra*, the court stated:

"The determination in each case depends on the intent of the settlor as disclosed in the language used in the instrument."

And in our view, that court's determination of the settlor's intent was a correct interpretation thereof. In New York, the doctrine that a remainder to "heirs" amounts to a mere reversion in the grantor has also been rejected as a rule of law, yet as recently as *Richardson v. Richardson* (1948), 298 N.Y. 35, 81 N.E.2d 54, the Court of Appeals of New York stated that this rule remains as "at least a rule of construction," albeit, "no more than a *prima facie* precept of construction which may serve to point the intent

of the author." In our view, that is precisely how the court in *May* approached the facts in the case. See also *Berlenbach v. Chemical Bank & Trust* (1932), 260 N.Y. 539, 184 N.E. 83, a case similar to the present one and cited with approval in *Richardson*.

Having concluded that the *May* case is valid law, we next determine whether the trust in our case discloses an intent to dispose of the trust property similar to the disposition in *May*. The present trust differs from *May* concerning the relevant language regarding "heirs" only in that it provides the property shall pass to such heirs "in equal shares."

■■ In *McKeown v. Pridmore* (1941), 310 Ill.App. 634, 35 N.E.2d 376, an extremely complicated case, some clarity was cast on this issue by way of a statement from Griswold on Spendthrift Trusts, appearing at page 653 of *McKeown*:

> "The chief justification of spendthrift trusts should be found in the protection they furnish to the beneficiary. He cannot be protected if he has died, and the restraint should accordingly be allowed only during his lifetime. After his lifetime his property should be held liable for debts."

This statement is applicable to the instant case. Since according to the trust instrument, appellant intended, if he died without a will, to pass his property to his heirs, this constituted, in our view, a general intention to keep the remaining corpus within his estate upon this contingency. This, we believe, means that he intended the trust to remain "his property" to quote the language of *Griswold* above, a conclusion buttressed by the fact that considerable expenditures were contemplated under the trust for payment of expenses in the event of his death, and further under the trust he could designate such legatees he might desire. In our view, it would be unjust, merely by virtue of the fact that the heirs took equal shares rather than shares in accordance with the rules of intestacy, for that property not to "be liable for his debts." We therefore hold that the consent of the heirs would not be required to revoke this trust as the appellant did not intend to vest such an interest in them.

■■ Beyond this, the appellees have also attempted to defend the decision of the trial court on a second and independent ground, namely, that the rehabilitative purposes of the trust have not been fulfilled. In our view, that is not the law as applicable here. In *Pernod, supra,* the rule was stated, in negative form, that revocation by consent is permissible so long as all the beneficiaries are ascertained and under no incapacity. It seems inconceivable that the rule in *Pernod* would contemplate only those few cases where revocation is sought after all trust purposes have been accomplished. Specifically in this case, according to the Restatement (2nd) of Trusts, Sec. 339, p. 171:

"If the settlor is the sole beneficiary of a trust, he can compel the termination of the trust, although the purposes of the trust have not been accomplished."
We thus hold that appellant could revoke the trust and remand for proceedings consistent with this opinion.

Reversed and remanded.

MORAN, P. J., and SEIDENFIELD, J., concur.