J. STIRLING MORTIMER, as Trustee, Plaintiff-Appellee, *v.* EARL C. MORTIMER *et al.*, Defendants-Appellants—(CHARLES E. MORTIMER, a minor, by JOSEPH H. HORWICH, his Guardian *ad Litem,* Counter Plaintiff-Appellant, *v.* J. STIRLING MORTIMER, as Trustee, *et al.*, Counter Defendants-Appellees.)

(No. 54712;

First District—June 6, 1972.

*Rehearing denied July 19, 1972.*

Joseph H. Horwich, of Chicago, for appellants.

Paul R. Hoffman, of Chicago, for appellees.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal presents two issues. 1. Whether the trial court erred in permitting an incompetent witness to testify. 2. Whether an *inter vivos* trust created in 1959 was revocable. The issues arise from pleadings in a declaratory judgment proceeding, the evidence and a declaratory judgment in which it was found that in 1965 the settlor revoked the trust. A brief summary of the material facts is necessary for our resolution of the issues.

## I.

John J. Mortimer had two sons, Earl C. Mortimer and the appellee, J. Stirling Mortimer. Earl C. Mortimer had one son, the appellant, Charles E. Mortimer. Appellee is a lawyer. In November 1959, at his father's request, he prepared a trust agreement "[d]ated the 21st day of November, 1959, and to be known as Trust No. 112159, by and between John J. Mortimer * * * [as settlor] and J. Stirling Mortimer * * * [as trustee] * * *." The trust consisted of the proceeds of insurance policies and shares of corporate stock. Its net income and such additional sums which the trustee in his discretion thought was necessary for the settlor's comfort, welfare and support, were to be paid to him for life. On the death of the settlor, the trust estate was to be divided in two equal parts, one-half for appellee and the other half for his child or children, then living. Among the trust terms was an article that made the settlement irrevocable. On the face of the document however, appellee drew lines through the words of the article. In the right hand margin, he wrote "OK" and underneath, initialled the deletions. The agreement was signed by John J. Mortimer and appellee.

Two or three days later, John J. Mortimer destroyed the trust agreement and signed another one, also prepared by appellee. This document like the first, was "[d]ated the 21st day of November, 1959, and to be known as Trust No. 112159 * * *." Appellee was the trustee and settlor was a life-interest beneficiary in the net income. As to the interests in remainder, this trust agreement provided that on the settlor's death,

the trust estate was to be divided into two equal parts, one-half for the child or children of appellee then living and the other half to be equally divided (at a stated time) between Earl C. Mortimer and his child or children. Appellant was two years old. He was then, and at the time of John J. Mortimer's death, Earl Mortimer's only child. The trust agreement contained the same article that had made the earlier trust irrevocable. It was deleted by appellee in the same way. Like the first one, it was signed by John J. Mortimer and appellee. At the point of the deletions, the document had this appearance:

ARTICLE VII: ~~The donor agrees that the terms and provisions made for his benefit, as well as the rights~~     OK
~~of any beneficiary named, shall be irrevocable and he~~     JSM
~~hereby waives the right to revoke, alter or amend this agreement.~~

For almost six years appellee administered the trust and paid the net income to settlor. Then, John J. Mortimer and appellee signed a third trust agreement. Like the other two, this one was also dated the 21st day of November 1959. However, in appellee's handwriting, the typewritten document was interlineated with the words "amended 11/17/65." This agreement provided that on the death of the settlor the trust estate was to be divided in two equal parts, "[P]art One to be designated 'Earl C. Mortimer,' and Part Two to be designated the J. Stirling Mortimer Trust * * * [and] as soon as conveniently may be * * * [the trustee shall] disburse that portion designated 'Earl C. Mortimer' to Earl C. Mortimer * * *." By this change in its provisions, appellant's vested interest in the trust was eliminated. Appellee continued to pay settlor the net income. John J. Mortimer died on July 4, 1966.

On December 21, 1966, appellee filed a complaint which he later amended to pray for a declaratory judgment that either the first trust agreement which John J. Mortimer signed was "[t]he operating and controlling trust by reason of its irrevocability * * * or the trust amended November 17, 1965 (the last one), because the other two trusts were revocable, is "[t]he valid and controlling trust to the exclusion of * * *" the other two which John J. Mortimer executed during his lifetime.

Appellant was nine years old when the suit was filed. A guardian *ad litem* was appointed for him. The complaint was answered. Later, by his guardian, appellant filed a counter-complaint praying for a declaratory judgment that the second agreement which gave him a vested remainder in the corpus was irrevocable because the settlor, John J. Mortimer, did not expressly reserve the power to alter, amend or revoke the trust. The complaint and counter-complaint were consolidated for trial.

Appellee was the only witness who could testify concerning the circumstances surrounding the preparation and execution of the three trust agreements. When he appeared as a witness on his behalf, appellant, by his guardian *ad litem*, objected on the ground that under the rules of evidence appellee could not testify. Appellant contended that trusts and wills were governed by the same rules; therefore, the "deadman's statute" barred appellee as a witness. The trial judge overruled the objection. After hearing the evidence that consisted mainly of appellee's testimony, the trial judge entered a declaratory judgment as prayed for in the amended complaint. In addition, the judgment contained findings that appellant failed to produce evidence in support of the allegations in his counter-complaint.

In this court, relying on the statute (Ill. Rev. Stat. 1967, ch. 51, par. 2), appellant argues that appellee was not competent to testify concerning the trust transactions between him and John J. Mortimer; and that the trial court erred in entering the declaratory judgment.

## II.

■■ The principal purpose of the "deadman's statute" is protection of decedents' estates from fraudulent claims. (*Fredrich v. Wolf*, 383 Ill. 638, 642—643, 50 N.E.2d 755.) This purpose is accomplished by prohibiting a party to a civil action, suit or proceeding (or a person directly interested) from testifying of his own motion or in his own behalf when the adverse party sues or defends as an executor, admnistrator, heir, legatee or devisee. (*Brownlie v. Brownlie*, 351 Ill. 72, 75—76, 183 N.E. 613.) In determining whether the statute applies, it is important to ascertain whether the suit, action or proceeding is brought or defended by a person in the capacity of personal representative, heir, legatee or devisee, or whether it involves or tends to impair the estate of a decedent. (See *Alward v. Woodward*, 315 Ill. 150, 146 N.E. 154; *Kalschinski v. Illinois Bankers Life Assur. Co.*, 311 Ill.App. 181, 35 N.E.2d 705.) In the case before us, neither appellee's complaint nor appellant's counter-complaint was brought or defended by a person in the capacity of a personal representative, heir, legatee or devisee. It does not appear that the suit or proceeding involves or tends to impair the estate of a decedent. For these reasons, the statute did not apply. Appellee was a competent witness. Therefore, the trial judge did not err when he allowed appellee to testify.

From his testimony, it appears that John J. Mortimer executed the first of three trust agreements in November, 1959. Appellant had no interest in the corpus of that trust. Two or three days later, the original of the agreement was destroyed. Appellee "[f]rankly considered this trust terminated ＊ ＊ ＊." He testified that he never acted as trustee

under the intended trust. In its declaratory judgment, the trial court found that this trust was revoked. Appellant accepts this ruling and raises no issue concerning the first trust. Thus, as to this phase of the case, there is no controversy between appellee and appellant.

There is controversy, however, concerning the second and third trusts executed by John J. Mortimer. Appellant contends that the second trust was irrevocable. Therefore, the third one could not be created. Appellant argues that the second trust agreement did not reserve in the settlor the power to revoke. Appellee counters with the contention that the article which made the trust irrevocable was deleted; and it was because of a mistake that the power to revoke was omitted from the trust agreement before it was signed. Therefore, the instrument can be reformed. To decide the questions raised by the respective contentions of the parties, we turn to the law of trusts and trustees.

■■■ It is an established rule that a written instrument which settles a trust without expressly or impliedly reserving to the settlor the power to alter, amend, modify or revoke, creates a trust that can neither be altered, amended, modified or revoked. (Bogert, Trusts and Trustees 2d ed. § 992 (1948); Scott on Trusts 3d ed. §§ 330.1, 331 (1967); *Morrison v. Nugent*, 311 Ill.App. 411, 36 N.E.2d 581.) A trust agreement that does not expressly or impliedly contain provisions for revocation or modification, can be revoked or modified only with the consent of all the beneficiaries, if they are in being, are *sui juris* and can consent. (*May v. Marx*, 300 Ill.App. 144, 20 N.E.2d 821; 89 C.J.S. Trusts par. 88(a).) If all the beneficiaries are not in being and *sui juris*, revocation or modification by consent is impossible. (*Pernod v. American National Bank & Trust Co. of Chicago*, 8 Ill.2d 16, 132 N.E.2d 540.) When it is claimed that omission of the power to revoke or modify was the result of a mistake of such character that would entitle the settlor to reformation of the trust agreement, a court may decree reformation by inserting the intended power or by construing the terms of the trust which imply the power. (*Scott on Trusts* 3d.ed. par. 332 (1967).) In a suit for reformation by the settlor, the burden of proof, by clear and convincing evidence, is on him. (*Finucan v. Kendig* (1958), 109 Ill. 198; Annot., 59 A.L.R.2d 1229.) In a suit for the same purpose by the trustee, as in this case, the burden of proof, by the same standard of evidence, is on the trustee. See *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425.

In this case, the article that made the second trust irrevocable was deleted. Nothing was inserted in its place. The document did not, expressly nor impliedly, reserve to the settlor the power to revoke or modify the trust. This omission, appellee claims, was the mistake of John J. Mortimer. Proof of this fact rests entirely on appellee's testimony. There-

fore, there arises the question whether this testimony was of the convincing character our law requires. *Pernod v. American National Bank & Trust Co. of Chicago, supra.*

Appellee testified that John J. Mortimer refused to sign the trust agreement because it was irrevocable. He said that "[m]y dad had to be convinced before he made any move, and his accumulations were the product of hard effort, and he was loathe to divest himself of any interest or any control." This testimony is contradicted by the third trust agreement, introduced in evidence by appellee, which shows that during his lifetime, John J. Mortimer created a trust that was irrevocable.

Appellee testified that when the second trust agreement was signed, no copy was made other than the one produced at the trial. This testimony, however, was contradicted by a bulk exhibit that was admitted in evidence by agreement of the parties. The exhibit included a copy of the trust used by appellee in obtaining the transfer of United States Steel Corporation stock to his name. Of more significance is the fact that this trust copy had a certification signed by an attorney for the brokerage house that handled the transaction stating it was "[a] true and complete copy of the within trust instrument and all amendments thereto, if any, in full force and effect this 23[rd] day of December, 1959." In this copy, the article that made the trust irrevocable was not deleted.

Appellee's original complaint for declaratory judgment alleged that during his lifetime, John J. Mortimer executed two trust agreements. During his direct examination, he testified consistent with these allegations. Then, without explanation, when he was called for redirect examination, appellee disclosed, for the first time, that John J. Mortimer executed three trust agreements, one earlier than the two at issue.

Appellee's testimony reveals that he was the trusted son of John J. Mortimer. Appellee was the lawyer who prepared the trust agreements his father signed. He said that Earl C. Mortimer and appellant's mother were told that the trust in which appellant had a vested interest was revocable. This testimony was refuted by appellant's mother. She testified that John J. Mortimer told her the trust was irrevocable. Although during the trial Earl C. Mortimer was in court, appellee never called him to testify.

■■ We have carefully studied the record in this case. We conclude that the evidence did not prove the second trust executed by John J. Mortimer was revocable. Appellee's contention that omission of the power to revoke or modify was the result of the settlor's mistake is not sustained by the evidence. For these reasons, it was error for the trial court to declare that the second trust was revoked in 1965.

224

Therefore, we reverse the judgment and remand the cause with directions that the trial court dismiss appellee's complaint and, in accordance with the evidence in the record, grant appellant declaratory judgment relief as prayed for in his counter-complaint. Further, that the trial court, consistent with the views expressed in this opinion, enter appropriate orders directing appellee to discharge his responsibilities as trustee under the terms of the second trust agreement signed by John J. Mortimer; and as provided therein, distribute to appellant his share of the trust corpus pursuant to the terms of that trust.

Reversed and remanded with directions.

STAMOS, P. J., and SCHWARTZ, J., concur.