ESTATE OF ARTHUR S. KRAUS, DECEASED, RENEE KRAUS, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Kraus v. Commissioner
Docket No. 45576-85.
United States Tax Court
T.C. Memo 1988-154; 1988 Tax Ct. Memo LEXIS 182; 55 T.C.M. (CCH) 600; T.C.M. (RIA) 88154; April 14, 1988; Affirmed in part Reversed in part and Remanded May 22, 1989 Harvey J. Silverstone and Lawrence C. Rubin, for the petitioner. David L. Zoss and Marjory A. Gerdes, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, *183 Judge: Respondent determined a deficiency of $ 152,279.37 in petitioner's Federal estate tax. After concessions by petitioner, the issue for decision is whether we should follow a state court's reformation of decedent's trust instrument, purporting to grant retroactively to the surviving spouse a general power of appointment over the trust property, for purposes of determining petitioner's estate tax marital deduction. FINDINGS OF FACT Some of the facts in this case are stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Arthur S. Kraus (decedent) died on October 17, 1981, a resident of Northbrook, Illinois. He was survived by his wife, Renee Kraus (Mrs. Kraus), who served as executrix of the estate, and three children. In 1970 decedent, a certified public accountant with extensive tax experience, executed as settlor the Arthur Kraus Insurance Trust (the trust). The trust contained devolution provisions that were contingent upon Mrs. Kraus' surviving him and provided for the creation of a trust upon his death to be known as the "Marital Trust Fund." The parties agree that, at the time of execution, the terms of *184 the Marital Trust Fund satisfied the requirements of section 2056[1] so as to allow for an estate tax marital deduction. In relevant part, the trust granted Mrs. Kraus a general power of appointment over the Marital Trust Fund with a pourover to a nonmarital trust only if the power was not exercised. The trust provided that, in funding the Marital Trust Fund, assets should be allocated so that appreciation and depreciation would be fairly shared between the marital and nonmarital trusts. The trust also granted Mrs. Kraus an unlimited inter vivos power of withdrawal such that, upon written notice, Mrs. Kraus could withdraw the entire principal. *185 The trust was prepared by Michael Rotman (Rotman), an attorney and cousin of decedent. Rotman had worked for the Internal Revenue Service as an estate and gift tax agent from 1962 through 1965 and had practiced law since 1965, primarily in estate tax planning. In two form letters dated December 30, 1976, and February 2, 1977, respectively, Rotman advised decedent and Mrs. Kraus to consult him about possible changes in their estate plans and amendments to the trust in light of the enactment of favorable estate tax legislation under the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520. After receipt of the letters, decedent met with Rotman to discuss changes in the trust. On or about June 6, 1977, decedent executed an amendment (the 1977 amendment) to the trust. The 1977 amendment removed Mrs. Kraus' lifetime power of unlimited invasion of the principal of the marital trust fund, redesignated "Trust A," providing instead a limited power to invade only for charitable, scientific or educational purposes or for the benefit of the decedent's children and their spouses. The 1977 amendment further provided that upon Mrs. Kraus' death, Trust A as then constituted would pour *186 over to Trust B, created for decedent's children. The 1977 amendment did not provide Mrs. Kraus with a general power of appointment with respect to Trust A. The amendment did provide "The grantor intends that this trust shall qualify for the Federal estate tax marital deduction," and directed the trustee to transfer into Trust A upon decedent's death a pecuniary amount equal to the maximum marital deduction. Decedent was aware of the language required to provide for a general power of appointment to qualify under section 2056. Upon decedent's death the amended trust held various assets and operated as his principal dispositive instrument. On October 12, 1982, petitioner filed its Federal estate tax return. On the return petitioner claimed a marital deduction as if the amended trust qualified for a marital deduction. On October 11, 1985, respondent timely issued the statutory notice of deficiency upon which this case is based. The notice disallowed a portion of the marital deduction in the amount of $ 303,941. On about November 18, 1985, Rotman's law firm filed on behalf of Mrs. Kraus, as trustee, a "Petition for Reformation of Trust" in the Circuit Court of Cook County, *187 Illinois, Chancery Division (the chancery court) with regard to the amended portion of the trust. The petition asserted that, on account of scrivener's error, the amended trust did not comport with the intent of the grantor. The relief requested by the petition, as indicated by the proposed order for reformation drafted by Rotman, was the insertion of the words "such person, organizations, or entities," effective nunc pro tunc, where the asterisk appears in the following 1977 amendment paragraph: Commencing with the death of the Grantor, the Trustee shall pay the income from Trust A in convenient installments at least quarterly to the Grantor's wife during her lifetime. The Trustee may also pay to the Grantor's wife such sums from principal as the Trustee deems necessary or advisable from time to time for her health and maintenance in reasonable comfort considering her income from all sources known to the Trustee. The Grantor's wife may at any time or times during her lifetime by instrument in writing delivered to the Trustee, appoint any part or all of the principal to [*] or in trust for any one or more of charitable, scientific, or educational purposes as she directs; and *188 the trustee shall reimburse her from the remaining principal for the amount of any gift tax incurred thereby.
This language, if originally included in the 1977 amendment, would have provided Mrs. Kraus an inter vivos general power of appointment. The children of decedent and Mrs. Klaus consented to the relief requested by the petition. The chancery court heard the petition for reformation only on a motion call, and only Rotman appeared before the court. On January 16, 1986, the chancery court entered an Order for Reformation with respect to the petition. The order reformed the 1977 amendment provision as requested in the petition for reformation. OPINION Petitioner, relying primarily upon Commissioner v. Estate of Bosch,387 U.S. 456 (1967), argues that we should respect the order of the chancery court and its retroactive effect for Federal tax purposes because it was rendered in accordance with Illinois law. Respondent argues that we do not need to determine whether the reformation was in accordance with Illinois law for either of the following two reasons: First, respondent, citing M. T. Straight's Trust v. Commissioner,245 F.2d 327 (8th Cir. 1957), *189 affg. 24 T.C. 69 (1955), and Van Den Wymelenberg v. United States,397 F.2d 443 (7th Cir. 1968), contends that, regardless of validity, the chancery court's order of reformation cannot retroactively bind the Commissioner and alter the tax consequences of the original instrument as drafted and executed. Second, respondent contends that, assuming Straight's Trust does not apply, we should not respect the chancery court's order, regardless of validity, for Federal tax purposes because such a redetermination would be contrary to the language of section 2056 and the intent of Congress. [2] Alternatively, respondent argues that, if we must evaluate the validity of the state court order, we should find it an improper application of Illinois law. *190 In Bosch the Supreme Court addressed whether a Federal Court or agency in a Federal estate tax controversy is conclusively bound by a state trial court adjudication of property rights or characterization of property interests when the United States is not made a party to such proceeding. In that case, like this one, the taxpayer and Commissioner disputed whether the surviving spouse had a power of appointment over a trust corpus at the decedent's death that would satisfy the requirements of section 2056(b)(5). The decedent had created a revocable trust for his wife, over which she was given a general power of appointment. The wife subsequently executed an instrument purporting to release the general power of appointment. After the decedent's death, the surviving spouse petitioned for and received a state court decree restoring the general power of appointment. The Second Circuit, affirming a Tax Court decision, held that the state court authoritatively settled the rights of the parties, for state law purposes and Federal tax purposes, and permitted the deduction. The Supreme Court reversed, holding that "where the federal estate tax liability turns upon the character of a *191 property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court." 387 U.S.; at 457. The Court also stated that Federal courts should accord finality to a state court's decision only if the local decision is made by the highest court of the state. In the absence of such a decision, only "proper regard," not finality, is to be accorded a prior local decision, and the Federal court is, in effect, to sit as a state court. 387 U.S. at 465. We and various Courts of Appeal have generally disregarded the retroactive effect of state court reformation decrees for Federal tax purposes. See Van Den Wymelenberg v. United States, supra;M. T. Straight's Trust v. Commissioner, supra;American Nurseryman Publishing Co. v. Commissioner,75 T.C. 271, 275 (1980), affd. without published opinion 673 F.2d 1333 (7th Cir. 1981) (involving an Illinois trial court order); Fono v. Commissioner,79 T.C. 680, 695 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984) and the cases *192 cited therein; contra Flitcroft v. Commissioner,328 F.2d 449 (9th Cir. 1964), revg. 39 T.C. 52 (1962). In Straight's Trust, the document at issue was a trust instrument which, as executed, created a single taxable entity. After the years in issue the taxpayer obtained from a state court a nunc pro tunc decree that reformed the instrument to create three trusts. The Eighth Circuit Court of Appeals, affirming a Tax Court decision, held that the order could not be given retroactive effect for Federal tax purposes. The court stated, "it is both inequitable and beyond the power of a State Court to change retroactively the status of a federal revenue measure with a resulting loss of revenue to the government." 245 F.2d at 329. The court explained that as between parties to an instrument a reformation generally relates back to the date of the instrument, but that as to third parties, such as the government, who have acquired rights under the instrument, the reformation is effective only from the date thereof. 245 F.2d at 330. The Seventh Circuit Court of Appeals, to which this case is appealable, followed the holding and *193 rationale of Straight's Trust in Van Den Wymelenberg v. United States, supra. In that case the taxpayers created a trust for their grandchildren, instructing their attorney to draft the trust to entitle them to an annual gift tax exclusion for each grandchild under section 2503(c). After the Commissioner disallowed the exclusions because the gifts did not qualify under section 2503, the taxpayers executed a corrected trust agreement to be retroactively effective, which purported to bring the original agreement into conformity with the exclusion provision. The Seventh Circuit agreed with the Commissioner that under the original agreement the gifts did not qualify under section 2503 and that the reformation did not have retroactive effect for Federal tax purposes. The court stated, "Even assuming that the amended agreement expressed taxpayers' intent at the time they executed the original agreement and that the discrepancy in that original agreement was caused by inadvertence, we hold the tax consequences must be determined by the original agreement." 397 F.2d at 455. (emphasis supplied.) The court went on to say, "not even judicial reformation *194 can operate to change the federal tax consequences of a completed transaction." 397 F.2d at 455. The parties make much over whether Bosch or Straight's Trust and Van Den Wymelenberg control. In this case there is little practical difference, for each decision in effect renders the chancery court's order not binding for Federal tax purposes and directs us to construe the instrument as it existed prior to reformation. Petitioner asserts that the instrument, as amended and prior to reformation, failed to provide Mrs. Kraus with a general power of appointment because of mistake, or scrivener's error. Petitioner does not assert that this is a case of ambiguous drafting. We therefore look to Illinois' rules of construction with regard to mistake in construing this instrument. Illinois law provides that a written instrument presumptively indicates the intention of the parties; this presumption is entitled to more weight where one of the parties is deceased. Law v. Bank of Galesburg,28 Ill. App.3d 98, 327 N.E.2d 609 (1975). An Illinois court of equity may reform a trust based on scrivener's error; however, the party seeking reformation must *195 prove the mistake by clear and convincing evidence. Pernod v. American National Bank & Trust Co. of Chicago,8 Ill.2d 16, 132 N.E.2d 540, 542 (1956); Mortimer v. Mortimer,6 Ill. App.3d 217, 285 N.E.2d 542 (1972). Reformation may be available not only for correcting words already inserted in a document, but also for inserting words or phrases which have been omitted. Froyd v. Schultz, 260 Ill, 268, 103 N.E. 220 (1913). Because this case involves a determination under Illinois law as to the existence of property rights created by a written instrument, we look to Illinois' parol evidence rule for purposes of determining whether the testimony of petitioner's witnesses is admissible. See, e.g., Estate of Craft v. Commissioner,68 T.C. 249, 263 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979). Illinois law provides that, in an action to reform a written instrument, parol evidence is admissible to show a mistake. Darst v. Lang,367 Ill. 119, 10 N.E.2d 659 (1937). We hold that petitioner has failed to prove by clear and convincing evidence that decedent intended to give Mrs. Klaus *196 a general power of appointment under the 1977 amendment. Our attention is drawn to the sentence of the 1977 amendment in which the subject power of appointment was granted: The Grantor's wife may at any time or times during her lifetime by instrument in writing delivered to the Trustee appoint any part or all of the principal to or in trust for any one or more of Grantor's decendants and their respective spouses and charitable, scientific or educational purposes as she directs; * * *
The instrument not only omits language that would reflect an intent to create a general power, i.e., that the permissible beneficiaries were to be without restriction or qualification; it also goes on to include language that reflects the contrary intent to create a special power, as indicated by the list of limited permissible objects. The decedent was a knowledgeable person and presumably read and understood this specific language. It cannot be overcome by a general intention to save taxes. The expression of intent within the instrument that the trust was to qualify for the marital deduction is thus relevant but not conclusive as to the critical issue of whether decedent intended to provide *197 Mrs. Kraus a general power of appointment. Decedent knew what language creates a general power and a special power and the estate tax consequences of each. We cannot conclude from the instrument that there was a mistake. In attempting to prove the existance of a mistake, petitioner relies heavily upon the testimony of Rotman, the scrivener. [3] Rotman testified that the mistake occurred as his office entered a marital deduction clause from a Rabkin & Johnson form book into a word processor, inadvertently leaving out five words which would have created a general power of appointment. Once entered into the word processor, the flawed clause was incorporated into the trust instruments of several clients, including decedent, and was not discovered until after petitioner's estate tax return was audited by the Internal Revenue Service. Rotman further testified that, during the time the 1977 amendment was drafted and executed, decedent never expressed an interest in changing Mrs. Kraus' power of appointment from general to special; rather, Rotman's discussion with decedent prior to drafting the 1977 amendment concerned the effect of estate law changes under the Tax Reform Act of 1976, *198 Pub. L. 94-455, 90 Stat. 1520, particularly the change in the method of allocating appreciation and depreciation under the trust. Petitioner provides no evidence, however, to corroborate any of Rotman's testimony. Rotman's testimony that decedent's discussion with him concerned only the effect of certain legislative changes is not consistent with the terms of the 1977 amendment as a whole, which reflect certain fundamental changes in decedent's estate plan that petitioner does not assert are attributable to error. For example, the unlimited inter vivos withdrawal power on written notice in the original trust was deleted as was the testamentary power for Mrs. Kraus to appoint the entire principal to her estate. The inter vivos power of withdrawal was replaced by the limited power of appointment and the general testamentary power *199 was replaced by a mandatory pourover to Trust B. The evidence of mistake, therefore, cannot be characterized as clear and convincing. Because petitioner has failed to prove for reformation of the instrument under Illinois law, it is not entitled to a marital deduction for the value of any of the trust corpus. Thus, we need not discuss other arguments of respondent. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect at the date of decedent's death. SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b) and (c), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. (b) Limitation in the Case of Life Estate or Other Terminable Interest. -- * * * (5) Life estate with power of appointment in surviving spouse. -- In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse -- (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by such spouse alone and in all events. ↩
2. In support of this argument, respondent asserts that: There is no provision in the marital deduction section, I.R.C. Section 2056, which authorizes a marital deduction for postdeath reformations of testamentrary instruments not qualifying for the marital deduction. If Congress had intended the Courts to be in the position of validating marital deduction bequest 2055(e)(3) which allows postdeath reformations for charitable deductions, would have been included in Section 2056. Absent such authorization as in I.R.C. Section 2055(e)(3), the Tax Court, which is not a court of equity, should not insert an equitable remedy of reformation into Section 2056↩. 3. Petitioner's only other witness was Mrs. Kraus. When asked at trial about her understanding of the power of appointment, Mrs. Kraus testified "I understood that I was the one that was going to handle it for the benefit of our family, of our children and whatever." This does not suggest that she could appoint the trust property to any stranger. ↩