LYNN FORSYTH, CONSERVATOR (ESTATE OF GREGORY FORSYTH) *v.* AUDREY ROWE, COMMISSIONER OF INCOME MAINTENANCE
(14684)

PETERS, C. J., CALLAHAN, NORCOTT, KATZ and PALMER, Js.

Argued May 4—decision released August 3, 1993

*Judith A. Merrill,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch* and *Hugh Barber,* assistant attorneys general, for the appellant (defendant).

*Christine M. Ellis,* with whom was *Jeffrey Trattner,* for the appellee (plaintiff).

*Kathryn Calibey* and *Alexandra Davis* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

NORCOTT, J. The dispositive issue in this appeal is whether a trust established for the benefit of the plaintiff's ward, Gregory Forsyth, and funded with the proceeds from the settlement of a suit brought on his behalf to recover damages for injuries he sustained in an automobile accident is a "medicaid qualifying trust"[1] under 42 U.S.C. § 1396a (k).[2] The plaintiff conservator was denied medicaid benefits by the defendant, department of income maintenance (department), and appealed to the trial court, which sustained the appeal. The department appealed the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court and remand the case for further proceedings.

The material facts are not in dispute. On August 26, 1988, Gregory Forsyth, who was twenty-four years old, sustained injuries as a result of a motor vehicle accident that left him unable to care for himself or to man-

---

[1] Contrary to what the term implies, a finding of a "medicaid qualifying trust" makes one ineligible for medicaid benefits. The term refers to a trust that is deemed to have been created in order to qualify for medicaid benefits and, for policy reasons, is considered an available asset to an applicant.

[2] Title 42 of the United States Code § 1396a (k) (1988) provides in relevant part: "TREATMENT OF POTENTIAL PAYMENTS FROM MEDICAID QUALIFYING TRUSTS.

"(1) In the case of a medicaid qualifying trust (described in paragraph [2]), the amounts from the trust deemed available to a grantor, for purposes of subsection (a) (17) of this section, is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term 'grantor' means the individual referred to in paragraph (2).

"(2) For purposes of this subsection, a 'medicaid qualifying trust' is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual. . . ."

age his affairs. The plaintiff, Lynn Forsyth, Gregory's father, was appointed conservator of his son's estate and person.[3] The plaintiff subsequently instituted a suit against the State Farm Insurance Company (State Farm) on Gregory's behalf to recover for injuries he received in the accident.[4]

On August 13, 1990, the plaintiff, acting on behalf of Gregory, entered into a settlement agreement with State Farm whereby State Farm would pay $300,000, minus attorney's fees, into the Gregory L. Forsyth Trust (trust) in return for the release of the plaintiff's tort claim. At the recommendation of both the plaintiff and Gregory's guardian ad litem, a trust agreement was executed on August 24, 1990,[5] and State Farm, after approval of the settlement and trust agreements by the Probate Court, transferred approximately $195,000 into the trust.

The plaintiff[6] subsequently applied to the state for medicaid benefits for Gregory. The department rejected the plaintiff's application because Gregory had assets in excess of the department's maximum asset limit. The department treated the funds in the trust as available to Gregory and included them in its calculation of his assets.

The plaintiff requested a fair hearing pursuant to General Statutes § 17-2a to contest the department's

---

[3] Throughout this opinion Lynn Forsyth will be referred to as the plaintiff when acting in his capacity as conservator. Gregory Forsyth will be referred to by name.

[4] State Farm was the insurer of the driver of the car with which Gregory had collided.

[5] The corpus and income of the trust are managed by a corporate trustee. Disbursements are made at the direction and discretion of a separate trust advisory committee consisting of three persons including the plaintiff. The agreement provides that the trust is intended to provide supplemental health care for Gregory.

[6] All the actions of the plaintiff were taken on behalf of Gregory.

denial of benefits.[7] At the hearing, the plaintiff argued that the trust was not a medicaid qualifying trust because it had been established by him and not Gregory and, therefore, that the trust funds were not available to Gregory. Without the inclusion of these funds, the plaintiff argued, Gregory would have met the department's asset limitations. The fair hearing officer concluded to the contrary that the acts of the plaintiff in establishing the trust were attributable to Gregory, that the trust was, therefore, a medicaid qualifying trust and that its funds were assets available to Gregory and includible in his assets for the purpose of determining medicaid eligibility. The fair hearing officer therefore concluded that no error had been made by the department and affirmed the denial of benefits to Gregory.

The plaintiff appealed the decision of the fair hearing officer to the trial court.[8] The plaintiff claimed that the hearing officer had improperly found that the trust had been established by Gregory. The plaintiff main-

[7] General Statutes § 17-2a provides in relevant part: "An aggrieved person authorized by law to request a fair hearing on a decision of the commissioner of income maintenance, or the conservator of any such person on his behalf, may make application for such hearing in writing over his signature to the commissioner and shall state in such application in simple language the reasons why he claims to be aggrieved. . . . The commissioner shall thereupon hold a fair hearing . . . . The aggrieved person shall appear personally at the hearing, unless his physical or mental condition precludes appearing in person, and may be represented by an attorney or other authorized representative. A stenographic or mechanical record shall be made of each hearing . . . . The commissioner of income maintenance and any person authorized by him to conduct any hearing under the provisions of this section shall have power to administer oaths and take testimony under oath relative to the matter of the hearing and may subpoena witnesses and require the production of records, papers and documents pertinent to such hearing. . . ."

[8] The plaintiff appealed the decision of the fair hearing officer pursuant to General Statutes § 4-183, which provides: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

tained that he had created the trust and that it was therefore not a medicaid qualifying trust. The trial court agreed with the plaintiff that his acts in setting up the trust were not attributable to Gregory and, therefore, sustained the plaintiff's appeal.

In this court, the department contends that Gregory is not eligible for medicaid benefits because the trust assets constitute resources available to him in excess of the department's resource standard. The department argues that Gregory is both the individual who established the trust and its beneficiary and that the trust, therefore, is a medicaid qualifying trust. The plaintiff, to the contrary, argues that the trust does not fit within the definition of a medicaid qualifying trust because it was established by him as Gregory's conservator and not by Gregory himself. The plaintiff claims that the plain language of 42 U.S.C. § 1396a (k) requires such a result. We believe that the plaintiff's reading of the statute is too narrow. We agree with the department and hold that for the purposes of § 1396a (k), Gregory is both the grantor and the beneficiary of the trust and that it is a medicaid qualifying trust. This reading is consistent with the history and purposes of both the medicaid program generally and § 1396a (k) specifically.

The federal medicaid program was enacted in 1965 as a cooperative federal-state endeavor designed to provide health care to needy individuals. 42 U.S.C. § 1396 et seq.; *Atkins* v. *Rivera,* 477 U.S. 154, 156, 106 S. Ct. 2456, 91 L. Ed. 2d 131 (1986). The program " 'provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons.' *Harris* v. *McRae,* 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784, reh. denied, 448 U.S. 917, 101 S. Ct. 39, 65 L. Ed. 2d 1180 (1980)." *Clark* v. *Commissioner,* 209 Conn. 390, 394, 551 A.2d 729 (1988). States are not required to participate in the pro-

gram, but once a state chooses to adopt the program it must establish a plan conforming with the requirements of the federal statute. Id. "Connecticut has elected to participate in the program and has assigned to the department the task of administering the program. General Statutes § 17-134a et seq."[9] *Matarazzo v. Rowe,* 225 Conn. 314, 319, 623 A.2d 470 (1993).

" 'As originally enacted [the] Medicaid [Act] required participating States to provide medical assistance to "categorically needy" individuals who received cash payments under one of four welfare programs established elsewhere in the Act. . . . The categorically needy were persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability. States, if they wished, were permitted to offer assistance also to the "medically needy"—persons lacking the ability to pay for medical expenses, but with incomes [or resources] too large to qualify for categorical assistance.' *Schweiker v. Gray Panthers,* 453 U.S. 34, 37, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981)." Id. Connecticut has chosen to cover the medically needy.

The Medicaid Act requires that participating states determine financial need by setting a resource standard that must be met before assistance can be provided. 42 U.S.C. § 1396a (a) (17). In Connecticut, the resource standard for a single medically needy applicant is $1600. Department of Income Maintenance, Uniform Policy Manual (1987) § 4005.10. A determi-

---

[9] General Statutes § 17-134a provides in relevant part: "The commissioner of income maintenance is authorized to take advantage of the medical assistance programs provided in Title XIX, entitled 'Grants to States for Medical Assistance Programs,' contained in the Social Security Amendments of 1965 and may administer the same in accordance with the requirements provided therein . . . ."

General Statutes § 17-134d provides in relevant part: "The commissioner of income maintenance may make such regulations as are necessary to administer the medical assistance program. . . ."

nation of eligibility under the resource standard may be based only on "such income and resources as are . . . *available* to the applicant or recipient . . . ." (Emphasis added.) 42 U.S.C. § 1396a (a) (17) (B). Assets held in irrevocable trusts are considered available only to the extent that they are distributed to a beneficiary. *Zeoli* v. *Commissioner of Social Services,* 179 Conn. 83, 94–95, 425 A.2d 553 (1979).

"[A] 'medicaid qualifying trust' is a trust, or similar legal device, *established* (other than by will) *by an individual* (or an individual's spouse) *under which the individual may be the beneficiary* of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." (Emphasis added.) 42 U.S.C. § 1396a (k) (2). The portion of principal and income from a medicaid qualifying trust considered "available" to an applicant "is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor." 42 U.S.C. § 1396a (k) (1).[10]

Neither party disputes that Gregory, who, through the plaintiff, applied for medicaid benefits as a medically needy individual, is a beneficiary of the trust. A

---

[10] Section 1396a (k) of title 42 of the United States Code is implemented in Connecticut by § 4030.80 C of the Department of Income Maintenance Uniform Policy Manual (1987), which provides: "The funds in a trust are considered available to an individual if:

"1. the trust was *established by the individual* or individual's spouse other than by means of a will; and

"2. the individual is the beneficiary of the trust; and

"3. the trustee is able to distribute the funds to the individual at the trustee's discretion. This is true even if:

"a. the trust is irrevocable; and

"b. the trustee does not exercise his or her discretion." (Emphasis added.)

determination of whether the trust is a medicaid qualifying trust, therefore, requires that we determine whether the trust was "established . . . by" Gregory as those words are used in § 1396a (k). We conclude that the trust was established by Gregory because it was funded with the proceeds from the settlement of his tort claim even though the settlement was actually consummated by the plaintiff acting on behalf of Gregory.

A trust is established by the person who provides the consideration for the trust even though in form it is created by someone else. *Matter of Brooks,* 844 F.2d 258, 263 (5th Cir. 1988); *Lehman* v. *Commissioner of Internal Revenue,* 109 F.2d 99, 100 (2d Cir. 1940); *Stewart* v. *Merchants National Bank of Aurora,* 3 Ill. App. 3d 337, 338, 278 N.E.2d 10 (1972); *Guaranty Trust Co.* v. *New York Trust Co.,* 297 N.Y. 45, 50, 74 N.E.2d 232, 36 N.Y.S.2d 443 (1947). This is true even where an individual provides consideration for the funding of a trust by another. See *Mahoney* v. *United States,* 831 F.2d 641, 648–49 (6th Cir. 1987). The trust in this case was funded with the proceeds from the settlement of the personal injury claim brought by the plaintiff solely on Gregory's behalf. Gregory provided the funds with which the trust was established when, through the plaintiff, his claim was settled in return for a payment to the trust.[11] Gregory, therefore, is the individual who established the trust.

The plaintiff would have us read § 1396a (k) to include only trusts established directly by the individual bene-

[11] The settlement agreement provided in relevant part: "I, Lynn Forsyth, Conservator of Gregory L. Forsyth, *on behalf of said Gregory L. Forsyth,* his heirs and assigns, hereby release and forever discharge Martha Wells, as driver, and State Farm Insurance Company, as insurer, and all heirs, successors and assigns of said releasees from all claims, damages, actions, or causes of action on account of damage to property, bodily injury

ficiary.[12] It is clear, however, from the purpose and history behind § 1396a (k) that a medicaid qualifying trust may also be "established . . . by an individual" when that individual, acting through his conservator, provides the consideration for the trust.

or consequential damages and present and future medical expenses resulting from an automobile collision which occurred on or about August 26, 1988, on Route ST-116, in North Salem, New York.

*"The consideration for this release is as follows:*

"No payments will be made to Gregory L. Forsyth or to Lynn Forsyth as his Conservator, but the Company will pay to the Gregory L. Forsyth Trust the sum of Three Hundred Thousand and 00/100 ($300,000.00) Dollars upon the delivery to it of this Agreement, properly executed." (Emphasis added.)

[12] In support of his argument, the plaintiff urges that we adopt the reasoning of two cases decided in other jurisdictions holding that trusts created by a conservator and a probate court on behalf of incompetent beneficiaries were not medicaid qualifying trusts. Both cases are distinguishable on their facts and we decline to follow their reasoning.

In *Kegel* v. *State,* 113 N.M. 646, 830 P.2d 563 (N.M. App. 1992), the trust created by the conservator was funded with the proceeds from settlement of a suit in which both the beneficiary, a minor child, and his parents each were named separately as plaintiffs each on their own behalf. The New Mexico Appellate Court found that there was nothing in the record indicating that the beneficiary was "entitled to any particular portion of the proceeds" from the settlement. Id., 567. The court then held that the trust had multiple grantors and that there was insufficient evidence in the record to determine that the beneficiary was the grantor of the trust. Id., 567–68. In the present case, Gregory, represented by the plaintiff, was the only plaintiff named in the suit that yielded the funds for the trust. Furthermore, there is no evidence in the record showing that anyone else might have had a claim to those funds. In *Miller* v. *Ibarra,* 746 F. Sup. 19 (D. Colo. 1990), four trusts created by the probate court for the benefit of four elderly incompetents were all funded by income streams that were insufficient to pay for the beneficiaries' medical expenses, but were in excess of the eligibility requirements for Colorado medicaid benefits. Id., 20. Each of the trusts designated the Colorado department of social services as the residual beneficiary. Id., 32. The Colorado District Court stated that the Congressional purpose for prohibiting medicaid qualifying trusts is "to prevent wealthy individuals, otherwise ineligible for medicaid benefits, from making themselves eligible by creating irrevocable trusts in order to preserve assets for their heirs." Id., 34. Noting that the designation of a public agency as residual beneficiary, rather than private heirs, removed any conflict with the purpose behind medicaid eligibility rules, the court held that the trusts were not medicaid qualifying trusts. Id. In the present case,

"The objective of statutory construction is to give effect to the intended purpose of the legislature. *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 538, 582 A.2d 1184 (1990). That axiom only applies in full force, however, [w]here . . . the language of a statute is . . . *absolutely* clear on its face and where no ambiguity is raised in applying the statute in a particular case. (Emphasis in original.) *Anderson* v. *Ludgin,* 175 Conn. 545, 554, 400 A.2d 712 (1978) . . . . *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* [219 Conn. 685, 692, 595 A.2d 313 (1991)]." (Internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 225, 602 A.2d 1019 (1992). The plaintiff's narrow reading of the words "established . . . by an individual" discloses an ambiguity in the language of § 1396a (k) as applied to the facts of this case. It would be anomalous to construe the statute to allow a medicaid applicant to accomplish through a conservator or guardian acting on his behalf what the law prevents that applicant from doing on his own.

Our conclusion reflects the legislative concern that the medicaid program not be used as an estate planning tool. The medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving medicaid benefits from the state. Congress enacted the medicaid qualifying trust provision as an addition to the "provisions designed to

---

the trust is sufficient to cover Gregory's current expenses and once its funds are depleted he will become eligible for medicaid funds. More importantly, the trust is directly contrary to the above stated Congressional purpose in that Gregory's heirs are the residual beneficiaries of the trust. See footnote 13.

assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available." H. Rep. No. 99-265, 99th Cong., 1st Sess. 71 (1985).

Section 1396a (k) was enacted as a response to the use of irrevocable inter vivos trusts to transfer one's own assets and qualify for medicaid benefits. The availability requirement; 42 U.S.C. § 1396a (a) (17); had created a loophole by which individuals anticipating the need for expensive long-term medical care could impoverish themselves and qualify for medicaid assistance while preserving their resources for their heirs. Assets or income held in irrevocable trusts are not considered resources to a beneficiary or applicant because the asset is not "available" to the grantor. *Zeoli* v. *Commissioner of Social Services,* supra, 94–95. An individual could place assets in an irrevocable discretionary trust that paid him the income for life until long-term medical care became necessary. At that point the trustee could exercise his discretion to withhold payments to the beneficiary, thus, allowing the beneficiary to qualify for medicaid assistance while preserving assets for his heirs. Congress closed this loophole by deeming available to the beneficiary the maximum amount that could, at the trustee's discretion, be distributed to the beneficiary from such a trust regardless of whether or not the funds were distributed. 42 U.S.C. § 1396a (k); H. Rep. No. 99-265, 99th Cong., 1st Sess. 71–72 (1985).

Our holding that a trust established by the person who furnishes the consideration is a medicaid qualifying trust for purposes of § 1396a (k) comports with the present Congressional mandate delineating the assets that are available to a potential medicaid recipient. To permit Gregory to collect medicaid benefits from the

taxpayers when $195,000 of his assets are sheltered in a trust, all of which could potentially go to his heirs,[13] would violate the spirit and intent of the medicaid program.

The determination of Gregory's eligibility does not, however, end with our conclusion that the trust is a medicaid qualifying trust. The trust assets are considered available to Gregory up to the maximum amount of payments that the trustee could disburse if he exercised his full discretion under the terms of the trust whether the distributions are actually made. 42 U.S.C. § 1396a (k) (1). As a result of the trial court's finding that the trust was not a medicaid qualifying trust, it never reached the determination by the fair hearing officer that the trustee was able to distribute all of the funds in the trust at the trustee's discretion. In light of our finding that the trust is a medicaid qualifying trust, we remand the case for further proceedings in the trial court regarding the extent of the trustee's discretion, and if the trustee's discretion is limited, whether such limitation is valid under the circumstances.[14]

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

---

[13] The trust agreement provides in relevant part: "Upon the death of GREGORY L. FORSYTH, any assets remaining in the Trust estate shall be distributed by the Trustee for the benefit of the surviving heirs of GREGORY L. FORSYTH . . . ."

[14] The department also argued, both in the trial court and in this court, that the trust assets are available to Gregory because the trust is a nullity. The department contends that the plaintiff lacked the authority, the Probate Court lacked the power and Gregory lacked the capacity to create a trust with the settlement proceeds. The trial court never addressed these issues and, therefore, we decline to address them today.