294 N.J. Super. 303 (1996)
683 A.2d 239
IN RE MATTHEW LENNON, A MENTAL INCOMPETENT.
Superior Court of New Jersey, Chancery Division Probate Part Union County.
Submitted February 13, 1996.
Decided May 23, 1996.
*305 Linda J. Robinson for plaintiffs Richard and Cathleen Lennon, guardians of Matthew Lennon (Law Offices of Herbert D. Hinkle, attorneys).
John W. Cooper, court appointed counsel for Matthew Lennon (Cooper, Rose, and English, attorneys).
KENTZ JR., J.S.C., Retired and Temporarily Assigned on Recall.
This matter is before the court on plaintiffs' verified complaint for the determination of the mental incompetency of Matthew Lennon (Matthew), appointment of a guardian, and for advice and direction concerning a certain trust established under a Declaration of Trust pursuant to a judgment of the Superior Court of New Jersey in 1987, in which Matthew is the beneficiary. Plaintiffs now seek court authorization to amend the trust's terms so that the trust funds will only be used to meet those needs which cannot be met through any public or private program of financial entitlements, services, or other benefits.
Plaintiffs are Matthew's parents. John W. Cooper, is Matthew's court appointed counsel.
This court adjudicated Matthew a mental incompetent on January 31, 1996 and appointed plaintiffs as guardians of his person *306 and property. The court reserved decision on the remaining issue pending receipt of briefs.
Matthew received approximately $565,000 from a medical malpractice settlement and judgment in 1981 followed by the Declaration of Trust in 1987. After careful investing with the help of a financial advisor, the trust is now valued at approximately $1,700,000. Plaintiffs are the trustees.
Plaintiffs assert that their intent, and that of the court, in initially approving the Declaration of Trust was that the trust provide for the lifelong protection of Matthew and only be used to supplement other resources available to Matthew by meeting those needs which cannot be met through other sources, including but not limited to, any government or private program of financial entitlements, services, or other benefits. Plaintiffs further allege that the current assets held in trust are grossly insufficient to meet all of Matthew's lifetime needs. According to his report, Mr. Cooper is in favor of amending the trust's terms. He did not, however, express an opinion as to how public assistance would view the changes sought. Therefore, it is necessary that the court clarify the purposes for which the funds can be used and determine how any changes may affect Medicaid eligibility.
Plaintiffs rely on the applicable statutes and case law over incompetents and minors for the proposition that a supplemental needs trust (SNT) can be created by the court in order to do whatever is in the best interests of the incompetent.
As noted earlier, the incompetent received a settlement/judgment in 1981, which was later modified by the Declaration of Trust. The current law regarding SNTs is 42 U.S.C. § 1396p(d)(4)(A) which permits such a trust to be created.[1] However, this rule was enacted as part of the Omnibus Budget *307 Reconciliation Act of 1993 amendments (OBRA 93), Pub.L. 103-66, § 13611(a) & (b), 107 U.S.Stat. 622-626. Section 13611(e)(2)(C) of Pub.L. 103-66 provides that the amendments relating to these new SNTs shall not apply with respect to trusts established on or before August 10, 1993. Therefore, 42 U.S.C. § 1396a(k)[2] determines whether such a trust should be permitted under the Medicaid rules.
According to section 1396a(k), in the case of a Medicaid Qualifying Trust[3] (MQT), the amounts from the trust deemed available to a grantor for Medicaid eligibility purposes are the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee for the distribution of the maximum amount to the grantor. Under the terms of Matthew's trust, the trustee can expend all of the income for his support and may invade the corpus with court approval. Therefore, assuming maximum discretion, the entire amount of the trust is available for Matthew's benefit.
An MQT is then defined as a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from a discretionary trust.
The sole issue for Medicaid eligibility purposes is who established the trust. Plaintiffs argue that Matthew is not the individual who established the trust pursuant to the MQT definition, because it was established by them pursuant to the judgment of the Superior Court. Other jurisdictions have considered this argument. In Forsyth v. Rowe, 226 Conn. 818, 629 A.2d 379 (1993) a conservator of estate and person of his son Gregory, *308 created a trust fund from proceeds of a personal injury settlement. The trust was funded by transferring the defendant's proceeds directly into the court approved trust. Plaintiff subsequently applied for Medicaid benefits but his application was rejected, because he had assets in excess of the department's maximum asset limit. Plaintiff appealed this determination, claiming that the "individual" (Gregory) himself did not create the trust as required under § 1396a(k) but that he created the trust as conservator for Gregory. The Connecticut Supreme Court rejected that argument as inconsistent with the history and purposes of both the Medicaid program and § 1396a(k) specifically. The Court held that "[a] trust is established by the person who provides the consideration for the trust even though in form it is created by someone else." Forsyth, supra, 629 A.2d at 384 (quoting Matter of Brooks, 844 F.2d 258, 263 (5th Cir.1988)); see Lehman v. Commissioner of Internal Revenue, 109 F.2d 99 (2nd Cir.1940), cert. denied 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940); In re Estate of Hickey, 263 Ill. App.3d 658, 200 Ill.Dec. 514, 635 N.E.2d 853 (1 Dist. 1994), cert. denied ___ U.S. ___, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995); Stewart v. Merchants National Bank of Aurora, 3 Ill. App.3d 337, 278 N.E.2d 10 (2 Dist. 1972), Bogert, Law of Trusts and Trustees, § 41, p. 428 (2d ed. 1984). The court further added that "Gregory provided the funds with which the trust was established when, through the plaintiff, his claim was settled in return for a payment to the trust. Gregory, therefore, is the individual who established the trust." Forsyth, supra, 629 A.2d at 384. Here, the same rationale should apply. Matthew furnished the consideration needed for the creation of the trust when he exchanged his claim against defendants for settlement funds later deposited in trust. Thus, contrary to plaintiffs' argument, I conclude that Matthew is the settlor of the trust.
Moreover, adopting plaintiffs' argument here would lead to an anomalous result by "[construing] the statute to allow a medical applicant to accomplish through a ... guardian acting on [Matthew's] *309 behalf what the law prevents that applicant from doing on his own." Id. at 385.
The Connecticut Supreme Court also determined that the type of trust in question was an MQT under § 1396a(k). Therefore, the funds were considered assets of the incompetent for Medicaid purposes. The court noted that the MQT provisions were designed not as an estate planning tool but as a way to "assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available." Id. at 385 (quoting H.Rep. No. 99-265, 99th Cong., 1st Sess. 71 (1985)). Several other state courts faced with similar facts have all reached the same conclusion based on the same rationale. Romo v. Kirschner, 181 Ariz. 239, 889 P.2d 32 (App. 1995); Thomas v. Arkansas Department of Human Services, 319 Ark. 782, 894 S.W.2d 584 (1995); Barham v. Rubin, 72 Haw. 308, 816 P.2d 965 (1991); Williams v. Kansas Department of Social and Rehabilitation Services, 258 Kan. 161, 899 P.2d 452 (1995).
Plaintiffs cite four cases in support of their argument: Miller v. Ibarra, 746 F. Supp. 19 (D.Colo. 1990); Kegel v. State, 113 N.M. 646, 830 P.2d 563 (App. 1992); Hughes by Hughes v. Physicians Hospital, 149 Misc.2d 661, 566 N.Y.S.2d 496, (Sup. 1991); and Trust Company of Oklahoma v. State ex rel. DHS, 825 P.2d 1295 (Okl. 1991). These cases can easily be distinguished.
Miller is distinguishable because the remainderman of the trust was the Colorado Department of Social Services. 746 F. Supp. at 32. (This is a "Miller" trust which was codified and sometimes referred to as a pension trust under § 1396p(d)(4)(B) of the OBRA 1993 amendments.)
In Kegel, the appellate court was unable to determine that the beneficiary was the grantor of the trust or that he was entitled to any particular portion of the proceeds because of insufficient evidence in the record. 830 P.2d at 567-68.
*310 The Hughes decision was soon overruled by the New York Legislature which enacted E.P.T.L. § 7-3.1(c), effective April 2, 1992. The statute provided that the type of trust in question was void as against New York public policy.
In Trust Co. of Oklahoma, the Oklahoma Supreme Court did not consider the issue of whether a distribution paid to the beneficiary's mother rendered the beneficiary ineligible for medical benefits because of petitioner's failure to raise the issue in the petition for certification. 825 P.2d at 1296, n. 1.
New Jersey statutes and regulations also support the Forsyth holding. First, New Jersey's Medicaid regulation regarding resources, N.J.A.C. § 10:71-4.2(a), provides that "[a]ny resource which is not specifically excludable under the provisions of N.J.A.C. § 10:71-4.4 shall be considered a countable resource for the purpose of determining Medicaid Only eligibility." The only related excludable resource listed in N.J.A.C. § 10:71-4.4(b)(6)(i) is an irrevocable trust. It is classified as an "inaccessible resource". However, section 10:71-4.4(b)(6) defines inaccessible resources as "resources which are not accessible to an individual through no fault of his or her own." (emphasis added). Clearly, a third party trust fits this definition. However, an individual's own proceeds from a judgment/settlement that are transferred into a trust do not. It is the legal guardian or court as the decisionmaker for a disabled person who decides to create a SNT. Therefore, any such transfer would still be considered an available resource. See C.C. v. Bergen County Board of Social Services, 94 N.J.A.R.2d 26 (Dept. of Medical Assistance).
Second, it should also be noted that New Jersey has a little known statute, N.J.S.A. § 30:4D-6f, which provides:
Any provision in a.... trust agreement ... which reduces or excludes coverage or payment for goods and services to an individual because of that individual's eligibility for or receipt of Medicaid benefits shall be null and void, and no payment shall be made under this act as a result of any such provision.
This statute was enacted in 1980, long before OBRA '93 became law. It was probably an early attempt to prevent persons from *311 using self-settled trusts as a means of avoiding Medicaid ineligibility. See Friedman, Lifetime and Estate Planning for Persons with Developmental Disabilities or Mental Illness, 170 New Jersey Lawyer, the Magazine, No. 170, July, 1995 at 42.
These regulations and statutes are consistent with the above cited case law and Medicaid's legislative history prohibiting "hiding" one's assets with the use of MQTs in order to qualify for Medicaid. Any other view would conflict with federal law and thus be preempted. U.S. Const. art. VI, cl. 2; Matter of Souder, 204 N.J. Super. 132, 135-36, 497 A.2d 1258 (App.Div. 1984).
Plaintiffs have argued that the court, under its expansive authority over a ward's estate and person, may create an SNT from a judgment or previously created trust under N.J.S.A. §§ 3B:12-1, 3B:12-2 and 3B:12-49. While it is acknowledged that the court has authority to create a suitable trust or approve a settlement, nevertheless the court may not create an SNT that is considered illegal for Medicaid eligibility purposes. They further rely on Lang v. Commonwealth of Pennsylvania, 515 Pa. 428, 528 A.2d 1335 (1987), to support their claim. Their reliance on this case is misplaced. Lang involved a testamentary trust, not a self-settled trust. Id., 528 A.2d at 1337. Most cases cited for the proposition that an SNT is not an MQT relate to third party testamentary or inter vivos trusts and not self-settled trusts.[4]See Zeoli v. Commissioner of Social Services, 179 Conn. 83, 425 A.2d 553 (1979); Tidrow v. Director, Missouri State Division of Family Services, 688 S.W.2d 9 (Mo. App. 1985); Lineback v. Stout, 79 N.C. App. 292, 339 S.E.2d 103 (1986); Estate of Escher, 94 Misc.2d 952, 407 N.Y.S.2d. 106 (Surr.Ct. Bronx County, 1978); see also Brunetti and Yellin, Special Trust Supplementing a Marital Trust Can Protect Handicapped Beneficiary, 11 Estate Planning 216 (1984); Frolick, Estate Planning for Parents of Mentally Disabled Children, 40 U.Pitt.L.Rev. 305 (1979); Hinkle, Guardianship and *312 Estate Planning, 115 N.J.L.J. 753 (1985). Third party testamentary or inter vivos trusts have never been held to be an MQT. See, e.g., 42 U.S.C. § 1396a(k)(2) (where an MQT was by definition a trust, or similar legal device, established "other than by will").
Even a testamentary devise that contains no trust provision has been determined to be an MQT if the beneficiary later attempts to create such a trust. See Hatcher v. Department of Health & Rehabilitative Services, 545 So.2d 400 (Fla.Dist.App. 1989), Ronney v. Director of the Department of Social Services, 210 Mich. App. 312, 532 N.W.2d 910 (1995), Striegel v. S.D. Department of Social Services, 515 N.W.2d 245 (S.D. 1994).
For all of the foregoing reasons, I find that this trust cannot be amended to qualify as a supplemental needs trust and therefore plaintiffs' request to modify the existing trust is denied.
A form of judgment in accordance herewith is to be submitted.
NOTES
[1] The current statute requires that upon termination of the trust, Medicaid must be reimbursed for all services rendered up to the total amount left in the trust. It is best to place a reimbursement provision in the trust document so as to put all parties on notice of this requirement.
[2] Pub.L. 99-272, § 9506, April 7, 1986, 100 Stat. 210, repealed by Pub.L. 103-66, § 13611(d)(1)(C), August 10, 1993, 107 Stat. 627.
[3] Contrary to what the term implies, a Medicaid Qualifying Trust disqualifies an applicant from Medicaid benefits.
[4] Of course this presupposes that the trust in question is a discretionary trust as opposed to a support trust. The latter mandates distributions which are always considered resources for Medicaid purposes.