[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Ethel Genser, appeals the decision of the defendant Commissioner of the Department of Social Services CT Page 343 denying the plaintiff's application for Medicaid benefits. Her appeal is brought pursuant to General Statutes § 17b-65 and the Uniform Administrative Procedures Act ("UAPA") 4-166 et seq.,4-183. Plaintiff specifically appeals from the corrected decision of the Department of Social Services ("DSF") hearing officer, dated June 19, 1998 (R. pp. 1-7).
The plaintiff is an 85 year old woman who has been continually institutionalized at the Windsor Hall Nursing Home since October 18, 1997. Her husband, Maurice Genser, is an 89 year old who resides at an assisted living retirement community in close proximity to the plaintiff's nursing home. Mr. Genser is afflicted with bouts of confusion, frailty of his age, depression and extensive hearing loss. The hearing officer found these conditions as symptoms of the normal process of human aging. The plaintiff claims that Mr. Genser's condition constitutes exceptional circumstances for purposes of determining Medicaid eligibility.
The plaintiff is seeking Medicaid eligibility effective December 1, 1997. The plaintiff had non-exempt assets of $321,312.28 as of October 18, 1997. Mr. Genser's share of such non-exempt assets was found to be $79,020 as of October 18, 1997, leaving the plaintiff with $242,292.28 in non-exempt assets as of the pertinent date of October 18, 1997. The application was denied because of these excess assets. (Rp. 18). The plaintiff requested a fair hearing in order to increase the amount to be protected as the community spouse's (Mr. Genser's) allowable share of assets. (R. P. 133).
"The federal Medicaid program was enacted in 1965 as a cooperative federal-state endeavor designed to provide health care to needy individuals. 42 U.S.C. § 1396 et. seq.; Atkinsv. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 91 L.Ed.2d 131
(1986); Bezzini v. Department of Social Services,49 Conn. App. 432, 436 (1998). States choosing to participate in the Medicaid program are required to follow federal requirements Clark v. Commissioner of Income Maintenance,209 Conn. 390, 394 (1988).
The Connecticut legislature has chosen to participate in the Medicaid program and by statute the Department of Social Services is authorized to administer such program, General Statutes § 17-134a et. seq., 17b-260, Matarazzo v. Rowe, 225 Conn. 314, 319
CT Page 344 (1993).
The original Medicaid Act required participating states to provide medical assistance to categorically needy individuals who received cash payments under one of four existing welfare programs. In addition, states if they wish were permitted to offer assistance also to the medically needy; persons lacking the ability to pay for medical expenses but with incomes too large to qualify for categorical assistance. Schweiker v. Gray Panthers,453 U.S. 34, 37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). Connecticut has chosen to cover the medically needy. Forsyth v.Rowe, 226 Conn. 818, 823-24 (1993).
The Medicare Catastrophic Coverage Act of 1988 modified the original Medicaid program to deal with the situations in which non-institutionalized spouses of institutionalized persons needed to be impoverished before the institutionalized spouse could receive benefits.
In the Medicare Catastrophic Coverage Act ("MCCA")a Community Spouse Resource Allowance ("CSRA") and a Minimum Monthly Maintenance Needs Allowance ("MMMNA") were established to provide the community spouse with "sufficient, but not excessive" resources and income to provide for his or her support. H.R. Report No. 100-105 (II) 100th Cong., 2d Sess. 69-71 (1988). The MCCA also was designed to eliminate loopholes in Medicaid law which permitted couples with substantial resources to qualify for the welfare assistance of Medicaid by sheltering resources in the community spouses name. "The MCCA closed this loophole by attributing certain amounts of the couple's combined resources to each spouse for eligibility purposes. Thus, the MCCA struck a balance between preventing impoverishment of the community spouse and ensuring that no one avoided contributing his or her fair amount of medical care.", see Commissioner of Medical Assistance,682 N.E.2d 874, 876 (Mass. 1997). Our Supreme Court in Forsythev. Rowe, 226 Conn. 818, 828-29 (1993), upholding a disqualification for Medicaid held: "Our conclusion reflects the legislative concern that the Medicaid program not be used as an estate planning tool. The Medicaid program would be a fiscal risk if individuals were permitted to preserve assets for their heirs while receiving Medicaid benefits from the State. Congress enacted the Medicaid qualifying trust provision as an addition to the "provisions designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used CT Page 345 to purchase the needed services before Medicaid benefits are made available'". In considering the Medicaid application not involving a Medicaid qualifying trust, the Appellate Court inBezzini v. Department of Social Services, supra49 Conn. App. at 442, relied on the policy considerations articulated above inForsythe to deny a Medicaid application preceded by a distribution of trust assets. Similarly in this case the plaintiff is advocating the preservation of in excess of $300,000 in assets for Mr. and Mrs. Genser's heirs, while Mrs. Genser is made the recipient of public welfare.
In referring to the MCCA, the New York court has held: "the narrow purpose of the legislation providing for the spousal allowances to protect the community spouse from financial disaster when the primary income-providing spouse becomes institutionalized. Schachner v. Perales, 648 N.E. 2nd 1321, 1324 (N.Y. 1995). Thus, the MMMNA is calculated in relation to the federal poverty level (UPN § 5035.30(B)(II)). It substantially exceeds the poverty level but it's calculation based on such a level is indicative of the purpose of the law. The legislative history of the MCCA reaffirms that Medicaid is an entitlement program for the poor and should not facilitate the transfer of accumulated wealth from nursing home patients to their non-dependant children. H.R. No. 100-105 (II), P. 896. In essence, up to certain limits, one half of the total resources of the couple (a spousal share) may be protected from community spouse as the CSRA or community spouse protected amount (CSPA)42 U.S.C. § 1396 R-5(f)(2); U.P.M. § 4000.01.
The MMMNA under U.P.M. § 1570.25 established by 42 U.S.C. § 1396
R-5(d)(3)(a) is 150% of the income at the official poverty line for two persons plus an excess shelter allowance42 U.S.C. § 1396 R-5(d)(3); U.P.M. § 5035.30(b)(2). The MMMNA is subject to a cap under both federal and state law42 U.S.C. § 1396 r-5(d)(3)(c), U.P.M. § 5035.30(b)(3), with the current cap at $2,019. The MMMNA is not counted in determining the institutionalized spouse's income that is to be used to offset his or her nursing home or other medical costs.42 U.S.C. § 1385 R-5(d)(1).
As in this case where the community spouse's actual income is not sufficient to generate the MMMNA, the community spouse is entitled to community spouse allowance (CSA), U.P.M. § 5035.39. A revision of the minimum monthly maintenance needs allowance is covered by 42 U.S.C. § 1396R-5 (e)(2)(b) CT Page 346 allows for an upward revision of the MMMNA "due to exceptional circumstances resulting in significant financial duress".
The dispositive issue in this appeal is whether the community spouse's condition found to involve: "bouts of confusion, frailty of his age, depression, and extensive hearing loss" (Finding of Fact #14) constitute an exceptional circumstance.
In reviewing this decision of an administrative agency the court's review is deferential. Neri v. Powers, 3 Conn. App. 531,537 (1984); see also § 4-183 (j) of the U.A.P.A.
"Ordinarily, this court affords deference to the construction of the statute applied by the administrative agency empowered by law to carry out the statutes purpose . . . an agency's factual and discretionary determinations are to be afforded considerable weight by the courts . . . cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of it's discretion . . . Furthermore, when a state agency's determination of a question of law has not previously been subjected to judicial scrutiny . . . the agency is not entitled to special deference . . . it is for the courts and not administrative agencies to expound and apply governing principles of law." Connecticut Light Power Co. v. Texas-OhioPower, Inc., 243 Conn. 635, 642-43 (1988); ConnecticutAssociation of Not-For profit Providers for the Aging v. Dept. ofSocial Services, 244 Conn. 378, 389 (1998).
Our Supreme Court in Burinskas v. Dept. of Social Services,240 Conn. 141 (1997) considered the MCCA and the specific application of the "exceptional circumstances" standard for an increase in minimum monthly maintenance needs allowance. In Burinskas the hearing officer improperly required that the specific items of expense "must be an exceptional circumstance". The court concluded: "it agreed with the trial court that, as a matter of law, the hearing officer set forth and relied upon a misinterpretation of the exceptional circumstances standard. The language of 42 U.S.C. § 1396 R-5(e)(2)(B), entails a finding of core exceptional circumstances that may give rise to expenses causing significant financial duress, see footnote 11. This language does not require that the expenses themselves be exceptional. By narrowly focusing on the mundane nature of these expenses without inquiring into their allegedly exceptional CT Page 347 genesis the hearing officer failed to apply this standard properly. As a result, he did not properly address whether Walter Burinskas' emphysema was an exceptional circumstance causing significant financial duress in the form of increased home and yard maintenance costs.
In contrast, the hearing officer in this decision specifically found that the community spouse's symptoms were not an exceptional circumstance causing significant financial duress in the form of increased living expenses. This case raises the question not addressed in Burinskas of whether certain specific conditions (bouts of confusion, frailty of his age, depression and extensive hearing loss) constitute exceptional circumstances.
The MCCA conference report (H.R. Rep. #661, 100 Congress 2d Sess. 261 (1988)). The report noted: "If either the community or institutionalized spouse establishes in a fair hearing that, due to exceptional circumstances resulting in significant financial duress, the community spouse needs income above the minimum monthly maintenance needs allowance, the state is required to increase the allowance to provide this amount notwithstanding the statutory sealing. Exceptional circumstances resulting in significant financial duress would include, but not be limited to the financial burden of caring for a disabled child, sibling or immediate relative."[1] The examples of exceptional circumstances noted in the conference report, though not exhaustive, are consistent with the hearing officer's determination that the symptoms typical of the normal process of human aging are not "exceptional circumstances".
The basic Medicaid policy of providing a benefit to the needy while recognizing asset limits of approximately $80,000 for a community spouse, and MMMNA in excess of 150% of the poverty level for two persons; suggests that in the ordinary course the community spouse has needs associated with the normal aging process. The court cannot ignore also in construing the statute the consequence of, as in this case, allowing the preservation of $300,000 plus of assets for heirs, while the limited assets of a program to provide for the care of the needy are exhausted.
The court concludes that the hearing officer applied the correct legal standard. The hearing officer's determination that the plaintiffs symptoms did not constitute an exceptional circumstances was based on substantial evidence in the record. The decision is affirmed and the appeal is dismissed. CT Page 348
Robert F. McWeeny, J.