**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2186-23

S.P.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and ATLANTIC
COUNTY DEPARTMENT OF
FAMILY AND COMMUNITY
DEVELOPMENT,

     Respondents-Respondents.

_____

Submitted May 6, 2025 – Decided May 22, 2025

Before Judges Smith and Vanek.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Steven A. Mimm (Spivack and Spivack, LLC), attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent Division of Medical Assistance and Health

Services (Donna Arons, Assistant Attorney General, of counsel; Francis X. Baker, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner S.P. appeals from the Assistant Commissioner (the Assistant Commissioner) of the State of New Jersey Department of Human Services, Division of Medical Assistance and Health Services' (DMAHS) final agency decision (FAD) affirming the denial of her Medicaid application pursuant to N.J.A.C. 10:71-4.4(b)(6)(i), finding that once she began self-funding the "A.H.P. Irrevocable Insurance Trust" (the Trust) it became a non-excludable available resource which exceeded the maximum allowable income. Based on our review and application of prevailing law, we affirm.

I.

We glean the salient facts from the record established at a hearing before an Administrative Law Judge (ALJ), at which Mary Lange, the Administrative Supervisor for the Long-Term Medicaid unit, and Trustee Allen Young testified.

On October 18, 2022, S.P. filed a Medicaid Only application with the Atlantic County Department of Family and Community Development (the County).

2

S.P. was the named beneficiary of a Trust established by her brother, which was funded by $300,000 in life insurance proceeds. The document establishing the Trust provides in pertinent part:

> [T]he Trustees shall hold in trust for [S.P.'s] benefit the sum of [t]hree [h]undred [t]housand [d]ollars ($300,000), to be used during her lifetime for the primary purpose of providing her with appropriate housing, if necessary. Without limiting the discretion of the Trustees, it is intended that this money may be used to purchase a residence in the name of the trust for the purpose of allowing said [S.P.] to live rent-free therein; to make payment on a mortgage on a residence owned by said [S.P.]; to supplement rental payments on residential property rented by said [S.P.]; or to loan money to said [S.P.] for the purposes of purchasing or improving a residence.

In 1992, most of the Trust funds were used to purchase a home in Egg Harbor Township, New Jersey, where S.P. currently resides with her adult daughter and grandson. Neither S.P.'s daughter nor her grandson are designated as Trust beneficiaries. While S.P.'s daughter makes "sporadic" contributions to household expenses—neither she nor her grandson are required to pay rent, nor do they choose to do so voluntarily.

Beginning in August 2017, S.P. deposited her social security income (SSI) directly into the Trust. Young believed S.P.'s payments were necessary to "strengthen the Trust" and to ensure its survival, advising S.P. that

3

"strengthen[ing] the trust with [S.P's SSI] . . . will help [to] keep [her] in the house."

Young acknowledged that the Trust provided for the purchase of a home with the explicit intention that S.P. live there "rent-free." However, viewing S.P.'s payments as a necessary solution to remediate the dissipating Trust funds, Young and his co-trustee decided to consider the payments "rent." Young testified that this decision was based in part on the Trust's accountant treating the payments on the annual report (the annual report) as "rental income." There is no written rental agreement between S.P. and the Trust.

As of October 31, 2022, the Trust had a balance of $21,645.28. The total amount of S.P.'s deposits did not correspond with the rental income set forth in the annual report. Although S.P. deposited $9,108 in SSI payments into the Trust in 2018, the annual report reflects rental income totaling $14,858. The same is true in 2020, when S.P. deposited $9,516, but the annual report reflects $10,319 in rental income. Conversely, in 2021, S.P. deposited $9,636 into the Trust; but the annual report reflects only $8,753 in rental income.

On December 13, 2022, the County found S.P. ineligible for Medicaid because she was over the $2,000 resource limit. Specifically, the County determined that once S.P. started funding the Trust with her income, the Trust

assets became a non-excludable available resource. S.P. requested a hearing to contest the decision, and the matter was transmitted to the Office of Administrative Law (OAL).

After the OAL hearing, the ALJ issued a decision finding S.P. was ineligible for Medicaid because the trust was an available resource. The ALJ found, "[b]y virtue of [S.P.] depositing her Social Security benefits into the [T]rust, the [T]rust began containing the assets of [S.P.] and was, therefore, a countable available resource to her for Medicaid purposes." Because S.P. exceeded the resource limit, the ALJ agreed the County had correctly determined S.P. was ineligible for Medicaid. Neither party filed exceptions to the ALJ's decision.

The Assistant Commissioner adopted the ALJ's decision in a FAD, finding pursuant to N.J.A.C. 10:71-4.4(b)(6)(i), S.P.'s SSI payments "resulted in the trust being a countable available resource for Medicaid eligibility," and reasoning the determination "aligns with the broader legal landscape aimed at preventing" fraud.

This appeal followed.

II.

A.

"[Our] review of DMAHS's determination is ordinarily limited." C.L. v. Div. of Med. Assistance & Health Servs., 473 N.J. Super. 591, 597 (App. Div. 2022). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (internal quotation marks omitted) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

"Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." I.L. v. Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006). "Nevertheless, we are 'in no way bound by the agency's interpretation of a statute

or its determination of a strictly legal issue.'" C.L., 473 N.J. Super. at 598 (quoting R.S., 434 N.J. Super. at 261).

B.

Medicaid is a federally created, state-implemented program designed, in broad terms, to ensure that people who cannot afford necessary medical care are able to obtain it. See 42 U.S.C. § 1396-1. Although a state is not required to participate in the Medicaid program, once it elects to participate, it must comply with federal law. See A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 342 (App. Div. 2009).

New Jersey participates in the Medicaid program through the New Jersey Medical Assistance and Health Services Act (the Act), N.J.S.A. 30:4D-1 to -19.5. The express intent of the Act is to enable the State, within the limits of funds available for any fiscal year, to obtain all benefits provided by the federal Social Security Act. N.J.S.A. 30:4D-2. The purpose of the Act is to provide medical assistance for those who have been determined to be unable to secure "quality medical care at their own expense . . . ." N.J.S.A. 30:4D-2.

The Assistant Commissioner and DMAHS administer the Medicaid program and promulgate regulations establishing "policy and procedures for the

7

application process," governing eligibility for Medicaid in New Jersey. N.J.S.A. 30:4D-4, -7; N.J.A.C. 10:71-2.2(b).

"[T]o be financially eligible, the applicant must meet both income and resource standards." In re Est. of Brown, 448 N.J. Super. 252, 257 (App. Div. 2017); see also N.J.A.C. 10:71-3.15, -1.2(a). The applicant's total countable resources cannot exceed $2,000 for an individual. N.J.A.C. 10:71-4.5(c). "A 'resource' is defined as 'any real or personal property which is owned by the applicant . . . and which could be converted to cash to be used for his or her support and maintenance.'" Est. of Brown, 448 N.J. Super. at 257 (quoting N.J.A.C. 10:71-4.1(b)). "Both liquid and non-liquid resources shall be considered in the determination of eligibility unless . . . [they] are specifically excluded under . . . N.J.A.C. 10:71-4.4(b)." Id. at 257-58 (alterations in original) (quoting N.J.A.C. 10:71-4.1(b)).

"A resource is considered 'available' to an individual when '[t]he person has the right, authority or power to liquidate real or personal property or his or her share of it.'" Id. at 258 (alteration in original) (quoting N.J.A.C. 10:71-4.1(c)(1)). Certain resources may be excluded for eligibility purposes, N.J.A.C. 10:71-4.4(b), including "irrevocable trust funds" since they are "not accessible

to an individual through <u>no fault of his or her own.</u>" N.J.A.C. 10:71-4.4(b)(6)(i) (emphasis added).

The "no fault" provision in N.J.A.C. 10:71-4.4(b)(6) exists to protect against utilization of self-settled trusts to reduce the total assets that qualify for Medicaid. <u>In re Lennon</u>, 294 N.J. Super. 303, 310 (Ch. Div. 1996). Although a third-party trust fits the definition of an inaccessible resource, an individual's own proceeds transferred into the trust from a judgment or settlement do not. <u>Ibid.</u> The amount deemed "available" is the maximum amount a trustee could, in the full exercise of discretion, distribute. <u>Id.</u> at 307.

Since 1986, Congress has taken steps to curb Medicaid applicants attempting to shelter their assets in irrevocable trusts in order to receive benefits from the state, while simultaneously preserving their own assets for themselves and their heirs. <u>See</u> <u>Ramey v. Reinertson</u>, 268 F.3d 955, 958-59 (10th Cir. 2001) (discussing this phenomena and Congressional response in enacting 42 U.S.C. § 1396a(k) and its subsequent replacement with "another statute even less forgiving of such trusts"). With the passage of the federal Omnibus Budget Reconciliation Act of 1993, 42 U.S.C. § 1396p(d), Congress established that trusts would, as a general rule, be counted as available assets subject to certain limited, defined exceptions. Consistent with federal law, when an individual's

own proceeds from a judgment or settlement are transferred into a trust, the trust is considered an available resource. See Lennon, 294 N.J. Super. at 310; see also 42 U.S.C. 1396p(d)(2)(A)[1]; 42 U.S.C. 1396p(d)(2)(C)[2]; 42 U.S.C. 1396p(d)(3)(B).[3] Therefore, a trust containing self-funded assets of a Medicaid applicant is a countable available resource regardless of the purpose for which the trust was initially established and any restrictions on distributions. See N.J.A.C. 10:71-4.4; 42 U.S.C. 1396p(d)(2)(C).

Here, we discern no error in the Assistant Commissioner's FAD, concluding S.P.'s Medicaid application was properly denied because the self-funding of the Trust transmuted it into an available resource, placing S.P. over the $2,000 limit for Medicaid eligibility. N.J.A.C. 10:71-4.5(c). Once S.P.

---

[1] Under 42 U.S.C. 1396p(d)(2)(A), a trust is established if the assets of the individual creating the trust were used to form all or part of the trust and if any of the following individuals established the trust: "(i) [t]he individual[;] (ii) [t]he individual's spouse[;] [or] (iii) [a] person, including a court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse."

[2] Under 42 U.S.C. 1396p(d)(2)(C), the "available assets" rule applies regardless of why the trust was established; whether the trustees have or exercise any discretion under the trust; any restriction of when or whether distributions can be made from the trust; or any restrictions on the use of distributions.

[3] 42 U.S.C. 1396p(d)(3)(B) specifies that portion of the trust corpus from which payments could be made to the recipient.

supplemented the Trust funds with her own income—a total of $49,852 between August 2017 and October 2022—the trust funds were no longer inaccessible through "no fault of her own." N.J.A.C. 10:71-4.4(b)(6)(i). Instead, the funds were rendered inaccessible by S.P.'s voluntary choice to deposit them into the Trust. See Lennon, 294 N.J. Super. at 310 (an individual's own proceeds from a judgment or settlement that are transferred into a trust are not properly considered "available" resources under N.J.A.C. 10:71-4.4(b)(6)).

Accordingly, the $21,645.28 Trust balance was properly considered an available resource pursuant to N.J.A.C. 10:71-4.4(b)(6)(i), constituting funds S.P. is required to exhaust before she can be Medicaid eligible. If the Trust funds were excluded for Medicaid eligibility purposes, S.P. would receive medical assistance benefits at public expense while preserving the excess funds for herself. Such a result is not permitted under Medicaid regulations.

Regardless of the absence of a rental agreement between S.P. and the Trust, the Trust language does not authorize charging S.P. rent to live in a residence already purchased with the intention that she have a place to live "rent-free." S.P.'s deposits of "rent" into the Trust is also not compliant with Medicaid rules and regulations.

Both S.P.'s daughter and grandson—neither of whom are named beneficiaries of the Trust—currently enjoy the benefit of living in a home owned and maintained by the Trust, without the corollary financial responsibility, S.P. does not meet the strict eligibility criteria for Medicaid—requiring the true unavailability of resources necessary for the applicant's care and support—when she is funding a pool of resources well in excess of the $2,000 limit—being expended for the benefit of other family members without authorization by the Trust documents.

While we acknowledge that S.P. relied on her trusted advisors, we are constrained to apply prevailing law to affirm the denial of her Medicaid application based on its accompanying financial documents. We provide no opinion on whether a refiled Medicaid application might be approved should a different financial scenario be established and documented.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12